## James J. McCormick v. Bay City.

*Bond: Seal; Evidence; Variance.* A declaration on a sealed bond will not permit evidence of one without seal, and an amendment would be necessary to avoid the effect of the variance.

*Plea: Admission.* A plea of the general issue without affidavit would not admit the execution of an unsealed obligation when a sealed one is declared on.

*Affidavit filed with plea, not to be technically construed.* An affidavit filed with a plea of the general issue should not be technically construed, and where it appears that a defendant means in good faith to contest the execution or delivery of the instrument sued on, he should be permitted to make his defense. It was not intended, in requiring such an affidavit, to compel a full statement of facts, but only to indicate the defense, or make a plain denial.

*Signing official bond as surety in blank: Agency: Estoppel.* Where a person signs his name in blank as surety to an official bond, and delivers it to his principal to have it completed and signed by others and handed over to the proper authority, he makes that person his agent for the whole business, and is estopped and bound by his action without regard to any secret instructions as to the conditions on which it should be completed and filed.

Public officers, in receiving official bonds into their custody, are not bound to hunt up sureties and make inquiry of them. They have a right, where such action has been had, to rely upon their genuine signatures, voluntarily affixed to a regular document conforming to law.

*Moneys paid out of treasury of Bay City without warrant, unlawfully expended.* No moneys can be lawfully paid out of the treasury of Bay City, except upon warrants drawn according to the charter; and money paid by the treasurer to contractors without such warrants cannot be set up in reduction of his liability on his official bond.

*Charter of Bay City construed: Ordinances require majority vote of all the aldermen: Presumption in favor of regularity of proceedings.* An ordinance cannot

23 MICH.—58.

McCORMICK v. BAY CITY.

be passed under the charter of Bay City, except by the vote of a majority of all the aldermen of the city in its favor. But where it appears that nine out of ten were present at the submission of an ordinance, and the entry, instead of merely reciting its passage, declares it to have been passed by " *a majority vote*," it will be presumed that this entry meant such a majority as was required by the charter.

*The record on the passage of ordinances should set forth the yeas and nays.* Regularly, the record on the passage of an ordinance should set forth the yeas and nays,—no other legal way existing for determining whether such a majority has voted.

The importance of accuracy in city records commented on.

*Heard October 2. Decided October 10.*

Error to Bay Circuit.

The case is fully stated in the opinion. The affidavit annexed to the plea which is referred to in the opinion, was as follows, viz:—

"James J. McCormick, the defendant in this suit, being duly sworn, deposes and says, that he never in fact executed the instrument in writing mentioned in the plaintiff's declaration, but the facts with relation to the execution thereof are as follows: That about the day of the date of said instrument in writing, Robert McKinney, the principal in said instrument in writing, came to this deponent and stated that he wanted this deponent to sign the same; that this deponent did thereupon refuse to do so ; that thereupon said McKinney told this deponent that he would procure the signatures of certain other responsible persons as sureties before the same was used; that said McKinney named the other persons who were to sign the instrument in writing, but deponent has forgotten who they were, and that it was agreed and understood between said deponent and said McKinney, that the instrument in writing should not be delivered to the plaintiff or to any one else unless at least four other responsible men signed it beside this deponent and said McKinney; that upon that express agreement this deponent signed the instrument in writing and delivered the same to said McKinney for him to get

the other signatures, and that the same was delivered to said McKinney solely for that purpose; that said deponent is informed that the other persons named have not signed the said instrument in writing, and without such other signatures the said instrument in writing has never been executed by this deponent."

*Maxwell & Hyde* and *Ashley Pond*, for plaintiff in error.

*Marston & Hatch*, for defendant in error.

CAMPBELL, CH. J.

McCormick was sued on a bond for ten thousand dollars, given to secure the official conduct of Robert McKinney, as comptroller of Bay City.

The bond was set forth as a sealed obligation. On the trial, a bond without seal was introduced, purporting to be the joint and several bond of McKinney as principal and McCormick and three others as sureties. This was objected to for variance, but admitted without proof; the court holding that the affidavit annexed to the plea was not full enough to put the execution and delivery in issue. We do not think an affidavit of this kind should be subjected to any very technical rules of construction. If it appears that a defendant means to contest the execution or delivery in good faith, any legal questions concerning the sufficiency of the defense should be reserved for the trial, when the facts could all be presented. It never was designed that a defendant should be compelled in his affidavit to state every fact, but merely to indicate his defense, or to make a plain denial. The affidavit here could not be treated as an admission of valid execution.

The plea, if not accompanied by an affidavit, would admit the execution of the bond described in the declaration, but

not of any other. Such an admission would not dispense with the necessity of its production in court. An instrument varying from that described would need to be proved; and even then could not be received without amending the declaration unless identical in legal effect and substance.

An obligation under seal differs in effect from one not sealed, in some important respects,—both as to presumption of consideration and in the effect of the statute of limitations upon it. The statute, which declares that a bond shall not be invalidated for want of a seal, does not thereby make it a sealed instrument. The seal, apart from any other consideration, is an ear-mark and matter of description whereby one of two otherwise similar instruments would be readily distinguished from the other. The court could properly have allowed an amendment, and without some reason to the contrary, would have compelled the defendant to go to trial under the amendment. But to assume that there was no variance, and to receive the unsealed bond in evidence without proof of execution was going too far, and was error.

But as this difficulty will be removed on a new trial, it becomes necessary to examine into the other grounds of defense, which the court below shut out on the ground that there was no legal denial of a valid execution and delivery.

The offer was, in substance, to show that McKinney got McCormick to sign as surety while the names of the sureties and the penalty of the bond were in blank, but it was understood and agreed he was not to use it unless he obtained certain specified sureties, whose names were not obtained; and that he delivered the bond contrary to this agreement and condition.

There is some confusion and conflict among the cases in regard to questions which are somewhat analogous to the one involved here, and it may be upon the very point

involved. But in some of the cases distinctions have been overlooked which appear to us to be material. In the present case no names were inserted in the bond of persons who failed to sign. The bond, when signed by McCormick, was not a complete instrument and required filling up with a penalty, and was expected to be so filled up as well as to be signed by others before it should become operative. The case, therefore, stands on different grounds from those where an existing obligation has been altered, or where it shows on its face that persons named in it have not signed it. By signing it in blank and giving it to McKinney for completion and delivery, McCormick made McKinney his agent to do what, according to their agreement, was necessary to give it legal efficacy. The amount of the penalty was indicated in the recitals, but there was nothing else on the face of the bond to put any one on his guard; and having authorized his agent by visible authority to fill it up and deliver it, and the only limit to his apparent authority being by secret instructions, the question arises, whether he is not estopped by the acts of that agent.

The law, which he was bound to know, informed him into whose hands the bond was to be delivered, and it was, therefore, directly known to him where he might leave notice of the conditions which he had imposed, so as to prevent the acceptance of the bond if they were not complied with. It was in his power to insert the names of the desired sureties and to make the bond joint and not several. He took none of these precautions. On the other hand he put it in the power of the principal debtor to get as many or as few sureties as he chose, and to deliver the bond in a shape and under circumstances, raising no suspicion, He was bound to know that if the bond was accepted, it would put into McKinney's hands control of valuable property and powers. Public officers cannot be expected to leave their offices, to run about and hunt up every one whose

signature is genuine, to ask if there is any reason for doubting the correctness of documents; and the course pursued here was so common as not to be at all chargeable with negligence. We have, then, the case of a person who has intrusted another with power to fill up, and procure signatures to, and to deliver, an official bond, and taken no steps to prevent an abuse of his agency; and we have as a consequence of this, the acceptance of the bond without negligence, and the obtaining, by means of it, of an important public office and the control of public funds. We can conceive of no stronger case for the doctrine of estoppel, and we approve the rules recognized in *State v. Pepper, 31 Ind., 76, and cases there cited,* and in *State v. Peck, 53 Maine, 284,* and *Inhabitants of S. Berwick v. Huntress, 53 Maine, 89.* Judge Redfield's note to *3 Am. L. Reg., N. S., 402,* while doubting the rule in some other classes of cases, approves of it when the facts are similar to those here. We do not express any opinion beyond the analogies of the facts before us. But in cases like this we think any rule discharging the surety would open the door wide to fraud and perjury.

Proof was offered that, at the request of the city treasurer and in his presence, McKinney paid a sum of one thousand dollars to one O'Connor, a sewer contractor, but the court refused to permit this unless it should be shown that O'Connor surrendered sewer orders to the same amount. This ruling was correct. No moneys can lawfully be paid by the treasurer of Bay City officially, except upon regular warrants, and the comptroller could not justify himself in applying money in any other way.—*Charter, Sec. 49; 2 Laws 1869, p. 591.*

A question also arose upon the effect of the charter in requiring ordinances to be passed by "*a majority of all the aldermen.*" It appeared that an ordinance in evidence in the

McCORMICK v. BAY CITY.

cause was adopted, when nine out of ten of the aldermen were present, and the record kept by the recorder declared it to have been "*adopted by a majority vote.*"

We have no doubt that it requires a majority of all the aldermen elect to pass an ordinance. No other construction of the charter would render the words used of any significance. But we think the well settled rule that all things should be presumed to be rightly done applies to such a record as that before us. And we think the fact that the word "majority" is used by the recorder, signifies something more than an ordinary vote by a majority of a quorum. It is not usual to record any thing more than a simple adoption, unless there is a reason for it, and the use of the term a "majority vote," seems fairly to point at an attempt to comply with the charter.

But while we feel compelled to act on this presumption, we cannot but censure the practice of making such brief and ambiguous entries, which at best must render it impossible to determine whether in fact the secretary understands the rule of law correctly. While the charter does not in express terms require the yeas and nays, yet we cannot perceive how it can be ascertained whether a majority vote exists without knowing the vote of each person; and the number if not the names of the voters on each side should be recorded. These records affect seriously the interests of private persons and of the city, and reasonable care should be taken to prevent any dispute concerning facts which can and must be known at the time the vote is recorded. Very much of the litigation against municipal bodies is due to the carelessness of the keepers of their records, and it ought to be prevented.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.