## No. 14,165.

S. O. ANDRUS ET ALS. VS. THE PARISH BOARD OF DIRECTORS OF THE PARISH OF ST. LANDRY.

### SYLLABUS.

1.  The law, as contained in Sections 7 and 10 of Act 81 of 1888, is to be construed as meaning that the Parish Boards of School Directors shall distribute the school funds to the several districts in their respective parishes ratably, in proportion to the number of persons in such districts between the ages of six and eighteen years; provided, that such boards, with the sanction of the State Board of Education, and when suitable sites and buildings have been otherwise supplied, may establish such central, or high, schools as may be necessary, and, for their maintenance, may draw upon the general school funds before apportioning the same to the several districts.

2.  Where a particular school district has been apportioned less than its share of the fund, it is entitled to be made good by deduction, in the next apportionment, the amount of the deficit from the amounts which would otherwise be apportioned to those districts which have received the excess.

3.  It is the duty of the Parish Board to limit itself, in the matter of incurring debt, to the revenue of the calendar year in which the debt is contracted, and to so keep its accounts that the revenues of different years may be distinguished as separate funds.

4.  Disbursements by the treasurer of the school fund of a parish otherwise

than on warrants drawn by the president and countersigned by the secretary of the Parish Board of School Directors are positively prohibited by law.

APPEAL from the · Sixteenth Judicial District, Parish· of St. Landry—*Lewis, J.*

*White & Thormton,* for Plaintiffs, Appellees.

*R. Lee Garland,* District Attorney (*Edward Benjamin DuBuisson,* of Counsel), for Defendants, Appellants.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

MONROE, J.   The plaintiffs, Scott O. Andrus and Rufus A. Pickett, residents of ward 4 of the parish of St. Landry, and fathers of educable children attending the public schools therein, complain that the Parish School Board is distributing, and is about to distribute, the school fund in violation of law by giving more to some districts than to others and by devoting to the maintenance of the Opelousas and Washington high schools, in wards 1 and 5, a portion of said fund, the whole of which should be· used for the support of the district schools.   They further complain that the Board has violated the law by contracting debts in excess of the revenues of the years for which they were contracted and, particularly, by incurring a debt, bearing interest at the rate of 8 per cent., to the St. Landry State Bank, for obligations of former years, by issuing negotiable evidences, and diverting funds of the current year in part payment, thereof, and by similarly diverting the sum of $533.10 to the payment of a debt to the treasurer; and they allege that, unless restrained, said Board will, in like manner, divert a further sum of $5,000 to the payment of the debt due to the said bank.   The prayer of the petition is, that the defendant Board be enjoined; "from further operating, or continuing, the Opelousas and Washington high schools, or appropriating any of the school funds therefor, until due reparation has been made to the various other school districts of the parish, and, particularly, to that in which petitioners reside; and that they be also enjoined from making any further appropriations out of the current funds of any year to the payment of the debts of any preceding year, and, particu-

larly, out of the funds of 1901, to the payment of the St. Landry State
Bank.   They further pray that the defendants be ordered to distribute
the school funds for the remainder of the year and in future years,
ratably, to the various districts in the parish and in such way as to
make due compensation to the districts; and, particularly, that of
petitioners, for the discrimination shown in favor of the Opelousas
and Washington high schools.   They further pray that the defendants
be ordered   *   *   *   to cease any payments under the null and void
contract with the St. Landry State Bank   *   *   *   to take such
proceedings as may be legal and necessary to recover all the sums
wrongfully paid out of the current funds of this year for debts of
preceding years and, particularly, the amount paid to the St. Landry
State Bank and the treasurer," etc.   After hearing upon a rule *nisi*,
the injunction issued as prayed for, and, the defendant having pleaded
the general issue, there was a trial upon the merits resulting in a
judgment ordering said defendant,

"To apportion the school funds of each year to the several districts
of the parish in proportion to the number of persons in the districts
between the ages of six and eighteen years;" prohibiting it from
"using or appropriating for the purposes of high schools at Opelousas
and Washington any of the funds apportioned to districts other than
the ones in which they are situated," and in all other respects dissolv-
ing the injunction and rejecting plaintiffs' demands.   From this judg-
ment the defendant has appealed, but it complains only of so much of
the judgment as limits the expenditure for the maintenance of the
high schools to the proportion of the school fund accruing to the
wards in which those schools are established.

The plaintiffs, on the other hand, have answered the appeal, and
pray that the judgment be amended in the following particulars:

"1st.   That sufficient be held back out of the per capita amounts
due to wards 1 and 5 (Opelousas and Washington high schools) to
reimburse ward 4 to the amount it should have received in the ap-
portionment already made for 1901 and subsequent years until final
decision, viz.: $807.40 and $1101.00, a total of $1908.40.   2nd.  That all
contracts with the St. Landry State Bank by virtue of which payments
of money loaned in 1900 were to be paid out of the funds of 1901 be
declared null and void as of date May 31, 1901, when this suit was

filed, and the School Board, through its treasurer, be held for that amount. 3rd. They pray for reasonable attorney's fees for suing out the injunction and for all orders necessary and proper and for general relief and costs, etc."

We find the following admissions in the record, to-wit:

"That the Parish School Board of the parish of St. Landry have never made, during any year, any apportionment of the school funds in proportion to the number of persons in each ward or district between the ages of six and eighteen years."

"That the total amount spent for teachers during the scholastic session, 1900-1901, was, for ward 1, $4970.00; for ward 2, $780.00; for ward 3, $1100.00; for ward 4, $1320.00 for ward 5, $3535.00; for ward 6, $1850.00; for ward 7, $2060.00; for ward 8, $1715.00. Total, $17,330.

"That, out of the total of these amounts, there was spent after the first of January, 1901, for the first ward, $3220.00; for the second $360.00; for the third, $595.00; for the fourth, $630.00; for the fifth, $2170.00; for the sixth, $950.00; for the seventh, $1030.00; for the eighth, $950.00.

"That the amount of $2800.00 spent on the high school situated in the first ward is included in the amount above given for the expenditure of that ward. Of this $2800.00, $2100.00 was spent after the first of January, 1901.

"That the sum of $1560.00 spent for the high school proper in the fifth ward is included in the amounts charged against that ward; and of said amount $1170.00 was spent after the first of January, 1901.

It is further admitted that students from any portion of the parish, who are qualified to enter, are admitted to both of the high schools."

It appears from the evidence that the total number of educable children in the parish, during the period covered by these admissions, was 15,188; and, hence, that the *per capita* expenditure was, approximately, $1.14, or, if we first deduct from the whole fund the sum of $4360.00, expended for the high schools, that the *per capita* available for the other schools was 90 cents. Including the amount expended for the high schools, in wards 1 and 5, the distribution of the fund, as made and as proposed to be made, is as follows:

Andrus et als. vs. Board of Directors.

| Wards | No. of Pupils. | Total. | Per Capita. |
|---|---|---|---|
| 1 | 2819 | $4970.00 | $1.76 |
| 2 | 1752 | 780.00 | .45 |
| 3 | 1040 | 1100.00 | .70 |
| 4 | 1835 | . 1320.00 | .70 |
| 5 | 2778 | 3535.00 | 1.27 |
| 6 | 1136 | 1850.00 | 1.63 |
| 7 | 1925 | 2060.00 | 1.07 |
| 8 | 1797 | 1715.00 | .90 |

Excluding the amounts expended for the high schools, the distribution, as made and as proposed, reduces the *per capita* allowance to wards 1 and 5 to 76, and 69, cents, respectively.

Upon the other hand, it is shown that the total number of pupils "in high school studies" during the period under consideration was 75, from which it follows that the *per capita* expenditure was $58.13.

It also appears, from the evidence adduced, that what may be called the "fiscal year," that is to say; the year from which the revenue of the Board takes its designation, is co-incident with the calendar year, beginning upon the first of January, whilst the scholastic year, as regulated by the Board, begins in October and continues as far into the next calendar year as the funds will permit. It further appears that but little of the revenue becomes available during the early months of the calendar year by which it is designated, and that the greater proportion of such revenue is actually collected by the Board during the next year. Thus; the state taxes, including the poll tax, for a particular calendar year, are not exigible until the month of December and do not become delinquent until the first of January of the year following. Hence, as we understand the testimony, the Board may find itself without means, derived from the revenue of the year, to pay the salaries of the teachers, *as they fall due*, for the earlier months, constituting the last months of the preceding, or the later, constituting the first months of what may be called the current, scholastic year. And, in order to obviate this difficulty and to relieve the teachers of the hardship of waiting for, or discounting, their salaries, the Board has been in the habit of borrowing the money with which to pay the salaries earned during a particular calendar year upon an informal pledge of the revenues of such year, thereafter to be collected, and of paying the interest thereon,

which the teachers would otherwise be obliged to pay. At the meeting of the Board, January 7th, 1901, the finance committee reported an indebtedness of $11,966.75, of which, there was due; to the St. Landry State Bank $10,159.75, to the assessor, $307.00, to the treasurer, "about $700.00," and to "miscellaneous account," $800.00. In September, following, when this case was tried, the treasurer testified that he had in his hands, to the credit of the Board, a balance of $203.86, which had been left after the payment of the obligations which had then matured. Whether the obligations for the year 1900 had been paid, exclusvely, from the revenues of that year, collected in 1901, 's not clearly shown, nor does the contrary appear. The treasurer states,. however, that he had paid to the bank some $9000.00 on certificates which had been issued to the teachers but for which no warrants had been drawn by the Board, and that he did this, as he had done before, without objection from the Board and because he thought it was proper in order to save interest.

The law applicable to the subject is to be found in the following statutory provisions, to-wit:

Act 81, of 1888, section 7 (referring to the Parish Boards.) "They shall apportion the school fund to the several districts in the parish in proportion to the number of persons in the district between the ages of six and eighteen years, and shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, their salary; and the said Board is entrusted with seeing that the various provisions of the law are complied with."

"Sec. 10. That the Parish School Board shall have the authority to establish graded schools, and to adopt such a system in that connection as may be necessary to insure their success; central or high schools may be established when necessary. The ordinances establishing such schools adopted by the Parish School Boards shall be submitted to the State Board of Education, and no high school shall be opened without its sanction, and no such school shall be established unless the amount be donated for its site and suitable buildings are provided without any expense out of the school funds," etc.

"Sec. 59. That said treasurer shall pay out of the school funds entrusted to his charge only on warrants drawn by the president and countersigned by the secretary of the Parish School Board, and shall state against what school district fund it was drawn, which warrants

shall be drawn by those officers only in virtue of appropriations regularly made by the Parish Board; the Parish Board shall make, annually, an estimate of the amount of the revenue for the year, appropriating the same as above required, and no warrant beyond the amount estimated shall be drawn for any one year. These warrants shall be numbered, and shall specify on their face to whom and for what they are given and the date of the appropriation made by the School Board; the treasurer shall pay the warrants only to the extent of the amount to the credit, on his books, and in the order in which they are presented, of school districts in behalf of which the warrants shall have been drawn; and said warrants shall be filed in his office as vouchers, and with the account kept by him as treasurer of the school fund, shall always be subject to the examination of anyone who chooses to examine them * * *. Sec. 73. That the different Boards of School Directors shall not be empowered to make contracts or debts for any one year greater than the amount of revenue provided according to this act, it being the intent hereof that parties contracting with said Boards shall take heed that due revenue shall have been provided to satisfy their claim, otherwise they may lose or forfeit the same; and no action or execution shall be allowed in aid thereof; and that the Boards shall not exceed their powers in incurring debt."

## Opinion.

As we interpret the sections 7 and 10, from which the foregoing excerpts have been taken, the latter must be regarded as in the nature of a *proviso,* which modifies the requirements of the former upon the subject of the apportionment of the school fund. The "high school" is well known in the public school system of this state, and in the legislation and literature concerning that system, as an institution in which scholars from the various common schools complete their public school education; and, if no other language had been used, the authority conferred upon the Parish Boards to establish "high schools," would suggest the idea of schools having a sphere of usefulness different from, if not wider, than that of the common schools of a single district. The language of the law is, however, "central, or high, schools," thus makng "high schools" and "central schools" synonymous terms, and leaving no room for reasonable doubt that it was the intention to authorize the Parish Boards to establish not only such

district schools as they might see proper, but, with the concurrence of the State Board, and upon the conditions specified, to establish central schools, for higher education, to which the district schools may serve as feeders. And the authority to establish such schools, considered in connection with the general power and discretion vested in the School Boards, carries with it the authority to maintain them from the general school fund. For, if the construction insisted upon by the plaintiffs, and adopted by our learned brother of the district court, be sustained, and it be held that the central, or high, schools, as well as the district schools, must depend for their support upon the proportion of the school fund allotted to the particular districts in which they are established, the results, as it seems to us, will be, that the children in the less populous districts will be denied the advantages of the high school education which it is the idea of the law to place within the, possible, reach of all the children of the parish; and, instead of being able to establish such schools when or where, "necessary," the Boards will be able to establish them only in populous and comparatively wealthy districts. We take it, therefore, that the law is to be construed as though it read: "The Parish Boards shall distribute the school funds to the several districts in the parishes in proportion to the number of persons in such districts between the ages of six and eighteen years; *provided,* said Boards, with the sanction of the State Board of Education, and when suitable sites and buildings have been otherwise furnished, may establish such central, or high, schools as may be necessary, and, for their maintenance, may draw upon the general school funds before apportioning the same to the several school districts."

The admissions and the evidence recited in the statement of the case, show that the defendant and its treasurer have administered the affairs of the schools in their parish and have handled the school fund without sufficient regard to the positive commands and prohibitions of the law. The Board admits that it has never apportioned the fund as the law requires. The treasurer admits that, during the year 1901, he paid out some $9000.00, for which, up to the date of the trial, in September, no warrants had been issued. There would seem to be no objection to the Board's borrowing money to meet the obligations of a particular calendar year which mature before the revenue for the year comes into its hands, provided, it keeps within the limits of such

revenue; nor is there any objection to the Board's paying the debt so contracted at the earliest possible moment, and thereby saving unnecessary expense in the way of interest, but why the treasurer should take it upon himself, and why he should be permitted, in the face of a direct and positive prohibition of law, to pay out thousands of dollars for which the Board has issued no warrants, we are unable to understand, the reason assigned by the treasurer being wholly insufficient.

The evidence leaves us in doubt as to whether, from the books of the Board, or of the treasurer, or both, it would be possible to distinguish the revenue of one year from that of another. And yet, if those revenues are not kept as separate funds, confusion and violation of the law are inevitable. The evidence also leaves it in doubt whether any debt was contracted in 1901 in excess of the revenue of that year, or whether any part of such revenue has been appropriated to the payment of debts previously contracted. And, whilst we find nothing which reflects upon the integrity of any of the parties concerned, it seems to us that the manner in which their duties are discharged and their accounts kept leaves much to be desired.

Assuming to be correct the view that we have expressed in regard to the authority of the defendant Board in the matter of the establishment and maintainance of the high schools, the ward in which the plaintiffs reside has been apportioned 20 cents less, per capita, for the year 1901 than it was entitled to, and it ought to be made whole in that respect. State ex rel. Board of School Directors vs. Superintendent, etc., 36th Ann. 241.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided, and reversed, in so far as it purports to control the discretion vested by law in the Parish Board of School Directors, defendant herein, acting with the approval of the State Board of Education, in the matter of the establishment and maintenance of central, or high, schools in the parish of St. Landry, and in so far as the said judgment denies the prayer of the plaintiffs that ward 4 of said parish be made good with respect to the deficit in the apportionment of the school fund, for the year 1901; and it is further ordered, adjudged, and decreed that, from any balance of revenue of said year still unexpended by said Board, or, if such balance be insufficient, from the revenues of succeeding years, there be apportioned to the schools of said 4th ward, in addition to the amount

to which they may otherwise be entitled, the sum of $367.00, and that said amount be deducted, *pro rata,* from the amounts apportioned, or which may hereafter be apportioned to those other words of the parish to which, for the year 1901, there was apportioned, exclusive of the amount necessary to maintain the high schools in wards 1 and 5, more than 90 cents *per capita* to the educable children in such wards, as found in the foregoing opinion. It is further adjudged and decreed that, in all other respects, the judgment appealed from be affirmed, the plaintiffs to pay the costs of the appeal.

Rehearing refused.