**PICKETT, County Treasurer, v. SMITH et al.**

No. 10449—Opinion Filed July 15, 1919.

(Syllabus by the Court.)

**1. Schools and School Districts—Apportionment of Gross Production Taxes.**

Section 5, c. 39, Laws 1916, amending section 4 of subdivision A, art. 2, c. 107, Laws 1915, levying a gross production tax on petroleum or other crude oils or mineral oils or natural gas, and which provides that one-sixth (five mills) of the total levy shall be for and in aid of the common schools of the county from whence the oil or gas is produced, and makes it the duty of the county treasurer receiving such taxes from the State Auditor to credit the same "to the common school fund of the county in proportion to the school population of such county," contemplates a ratable distribution thereof by the county treasurer throughout the several districts and parts of districts of the county.

**2. Same.**

In apportioning throughout the county such gross production taxes, it is the duty of the county treasurer to include in the apportionment all resident school children of the producing county, notwithstanding the fact that a portion of them are included in a joint school district, the larger portion of which is in an adjoining county.

**3. Same.**

Where in the apportionment of the gross production tax by the county treasurer an error has been made whereby a joint school district, located partly in such county, has received no part of the tax paid to the county treasurer, and there is on hand, from the same source, a sum in excess of the amount to which such district is entitled, payment of the tax for the omitted years should first be made such district before making a new and correct apportionment.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Mandamus by W. R. Smith, Charley Barnes, and L. H. Meyers, clerk, member, and director, respectively, of Joint School District No. 102, Payne and Creek Counties, Okla., against Enos R. Pickett, County Treasurer of Creek County. From the order granting a peremptory writ, defendant brings error. Affirmed.

Earl Foster, Co. Atty. of Creek County, and F. A. Speakman, Asst. Co. Atty., for plaintiff in error.

Thrift & Davenport and H. S. Williams, for defendants in error.

SHARP, J. This case presents error from the district court of Creek county. During the times complained of Enos R. Pickett was county treasurer of Creek county, and W. R. Smith, Charley Barnes, and L. H. Meyers were clerk, member, and director, respectively, of joint school district No. 102, located in Payne and Creek counties. The larger portion of the territory embraced in the joint school district was in Payne county, and the district was, therefore, except in matters relating to the alteration of the boundaries thereof, under the supervision and control of the superintendent of public instruction of Payne county. Section 2, art. 4, c. 219, Laws 1913. During the year ending June 30, 1917, the district had a scholastic census of 340, of which number 274 pupils resided in that part of the district situated in Creek county; while during the year ending June 30, 1918, the district had a scholastic census of 339, of which number 274 resided in that portion of the district within the limits of Creek county. During the fiscal year ending June 30, 1917, Pickett, as county treasurer of Creek county, received and disbursed gross production taxes in the sum of $433,938.16 to the school districts of Creek county, not including any portion of joint school district No. 102. The enumeration of the children of scholastic age of Creek county on the basis of which said amount was distributed was 12,981. Each of the school districts, other than joint school district No. 102, received the sum of $33.42 for each person of scholastic age for that period. During the fiscal year ending June 30, 1918, defendant Pickett, as county treasurer of Creek county, received and disbursed gross production taxes in the sum of $233,244 to the school districts of Creek county other than that portion of joint school district No. 102 located in said county. The enumeration of school children of scholastic age of Creek county on the basis of which said amount was distributed was 15,668. Each school district received the sum of $14.88 for each person of scholastic age for

that period. During the years named the officers of joint school district No. 102 duly filed with the county superintendent of Payne county all reports required by law, including the enumeration of the persons over the age of six and under the age of 21 years residing in said school district, including those residing in Creek county. At the time the action was begun Pickett, as county treasurer, had in his possession and under his control gross production taxes in excess of that claimed by the joint school district, and which he avowedly intended to distribute, as in previous years, to the exclusion of joint school district No. 102.

The question involved is the right of a joint school district, organized and existing pursuant to article 4, c. 219, Laws of 1913, to participate in the distribution of taxes collected under section 7464, Revised Laws 1910, as amended by section 1, subdivision A, art. 2, c. 107, Laws of 1915, and as further amended by chapter 39, Laws of 1916, which section provides for a production tax upon oil and gas and other minerals. The act of 1915, after providing that the gross production revenues shall be paid into the state treasury, one-half to be credited to the general revenue fund of the state, provides that "the remaining one half shall be by the State Treasurer distributed to the county treasurer of the counties from whence the same was collected, in proportion to the school enumeration of such counties, and same shall be distributed in aid of the county schools of such counties upon a per capita basis as are other school funds." After providing that one-sixth (five mills) of the gross production tax levied and collected should be for and in aid of the common schools of the county from whence the oil or gas and other mineral was produced, the 1916 amendment provided that such amount should be by the State Auditor paid to the county treasurer of the producing county, "to be credited to the common school fund of the county in proportion to the school population of such county." Board of Education v. Corey, 63 Oklahoma, 163 Pac. 949.

As the taxes the distribution of which it is claimed was erroneously apportioned accrued subsequent to June 30, 1916, the act of February 14, 1916, should first be looked to in determining the law by which the tax paid to the county treasurer of Creek county should be distributed. While section 5 of the latter act differs in some respects from section 4 of the 1915 act, it does not manifest a purpose to alter or change the distribution of the funds coming into the hands of the county treasurer from gross production revenues, in so far as the common schools of the county are concerned. Both

acts fairly construed sustain the contention that such revenues are to be distributed throughout the several school districts in proportion to the school population of such districts. Only a strained construction of the law would authorize the conclusion that the distribution should not take into consideration school children who, though they were residents of Creek county, attended school in a joint school district made up in part of territory lying in an adjoining county. Being residents of Creek county, the 274 school children formed a part of the school population of that county, though within a joint school district the larger portion of whose area was in Payne county. No statute other than those already mentioned has been called to our attention providing for the distribution of gross production taxes in joint school districts. Section 7694, Revised Laws 1910, as amended by section 5, art. 2, c. 219, Laws of 1913, and by chapter 250, Laws of 1915, provides for the apportionment by the county superintendent of the state school funds, together with the unapportioned county school funds in the county treasury, among the school districts and parts of districts in such counties in the ratio of the number of persons of school age who are to receive the same residing in each district or part of district, as shown by the last annual report of the several clerks of such district and parts of districts. It will be seen that in the distribution of such funds parts of districts are to be included in the apportionment. We have seen that during the years involved the officers of joint school district No. 102 filed with the county superintendent of Payne county an enumeration of the persons of scholastic age residing in the district, and including those residing in Creek county. These reports show that for each of the years involved 274 school children of joint school district No. 102 resided in Creek county. It would have been a very simple matter for the county treasurer of Creek county, if so inclined, to have obtained this information and made use thereof in the apportionment of the funds. No difficulty, it seems, was met in ascertaining the facts at the time the stipulation was entered into, and upon which the case was submitted to the trial court. Applying, as far as practicable, the statutory requirements in respect to the distribution of the state school funds and unapportioned county school funds to the apportionment of gross production taxes, parts of school districts, such as joint school districts, are entitled to participate therein in the ratio that the school population thereof resident of the producing county bears to the entire school population of such county. Such were the views announced in Board of County

Commissioners v. Alexander, 58 Okla. 128, 159 Pac. 311, 316. Any other conclusion would defeat the legislative intent and deprive joint school district No. 102 of any participation whatever in any of the revenues arising from the production of oil and gas in the county of which it formed a part.

It being the duty of the county treasurer to apportion the gross production tax ratably, according to the school population of Creek county, without respect to the fact that some of the children of school age, while residents of such school district, attended school in a joint school district lying partly in another county, the performance of such duty may properly be controlled by mandamus brought by such district. Nor may the county treasurer defeat the purpose of the law on the ground that the officers of the joint school district, or the county superintendent, failed to furnish him with the district enumeration including the scholars of such district who resided in Creek county. There is no law requiring the county superintendent of Payne county, or for that matter the county superintendent of Creek county, officially to report to the county treasurer of Creek county the scholastic population of the joint school district. But, the right of participation being evident, the failure of the Legislature to specifically require either the school district officers or the county superintendent to furnish official information in this respect, or to provide the manner in which the school population may be ascertained, affords no justification for a wrongful apportionment, at least where the means of authentic information is readily procurable.

It is admitted that the county treasurer has in his custody and under his control funds paid from the same source more than sufficient to pay to such district its portion of the 1916-1917 and 1917-18 taxes. It is only just that such payment should be made before distribution for succeeding years is made. In so doing the school districts and parts of school districts located in Creek county will each receive for the several years their proper apportionment of the gross production revenue accruing to Creek county. Andrus v. Board of Directors, 108 La. 386, 32 South. 420; Louisville School Board v. McChesney, 109 Ky. 9, 58 S. W. 427; State ex rel. McWylie v. Mathews, County Auditor, 150 Ind. 597, 50 N. E. 572. Such being the manifest purpose of the Legislature, the judgment of the trial court awarding the peremptory writ of mandamus is in all things affirmed.

OWEN, C. J., and PITCHFORD, McNEILL, and HIGGINS, JJ., concur.