L. A. ANDREW, State Superintendent of Banking, Appellee, v.
IOWA SAVINGS BANK OF ESTHERVILLE et al., Appellees;
STATE OF IOWA et al., Appellants.

**BANKS AND BANKING:** Deposit of Public Funds—Rescinding Au-
thority—Effect. The action of the governing board of a municipal-
ity (1) in rescinding its former action authorizing its treasurer to
deposit public funds in a named depositary to a named amount, and
(2) in authorizing such deposits in said depositary in a lesser
amount, renders all existing deposits in said depositary in excess of
the latter authorization, *after the lapse of a reasonable time,* unlawful
and unauthorized, and to that extent deprives the municipality of the
right to reimbursement from the state sinking fund for public de-
posits.

**Headnote 1:** 7 C. J. pp. 484, 485 (Anno.); 18 C. J. p. 591.

*Appeal from Emmet District Court.*—F. C. DAVIDSON, Judge.

APRIL 5, 1927.

REHEARING DENIED JULY 1, 1927.

Application by the county treasurer for an order that cer-
tain public funds deposited in a bank which had been placed in
the hands of the superintendent of banking as receiver be certi-
fied and paid out of the state sinking fund for public deposits.
An order was entered as prayed, and the state officials appeal.—
*Reversed.*

*Ben J. Gibson,* Attorney-general, for appellants.

*O. N. Refsall,* County Attorney, for intervener, appellee.

FAVILLE, J.—On March 4, 1925, the board of supervisors of
Emmet County adopted a resolution by which they designated
the Iowa Savings Bank of Estherville, Iowa, as a depositary of
the public funds of said county, and fixed the maximum of said

deposit in the sum of $84,000. After the adoption of said reso-. lution, the county treasurer of said county deposited funds in said bank in excess of $71,000. On the 7th day of October, 1925, the said board of supervisors duly adopted a resolution whereby they expressly repealed the said resolution of May 4, 1925, and enacted in lieu thereof a new resolution, again designating said bank as a depository of public funds of the county, and provided that the maximum deposit of said public funds in said bank should not exceed the sum of $50,000. The bank closed its doors on the 24th day of November, 1925, and on said date the county treasurer had on deposit in said bank public funds of said county in the amount of $71,724.60, after allowing certain offsets which are not involved in this appeal. The result was that, at the time of the closing of said bank, the amount of deposit of public funds in said bank exceeded the amount authorized by the resolution of October 7, 1925, by the sum of $21,-724.60. No question is raised as to the right of the claim against the state sinking fund in the sum of $50,000, and the sole question involved in this appeal is respecting the claim for the excess of said deposit above $50,000,—to wit, $21,724.60.

Chapter 173 of the Acts of the Forty-first General Assembly is commonly known, by reason of its authorship, as the Brookhart-Lovrien bill. Said act provides for the creation in the office of the treasurer of state of a separate fund to be known as the state sinking fund for public deposits, the purpose of said fund being declared to be to secure the payment of their deposits to state, county, township, municipal, and school corporations having public funds deposited in any bank in the state, "when such deposits have been made by authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds." Section 1. Section 4 of said act provides:

"Whenever a depository bank is placed in the hands of a receiver for liquidation and the amount of the several deposits of public funds deposited therein by authority of and in conformity with the direction of the legal governing council or board which is by law charged with the duty of selecting depository banks for said funds and fixing the amount thereof, has been ascertained and fixed by an order of court, the superintendent of banking shall then certify such list of public deposits

so approved by the court to the treasurer of state and the
auditor of state. The treasurer of state shall thereupon simul-
taneously divert all interest coming into his hands from state
deposits and deposit the same in said sinking fund and shall
issue an order to the county treasurers of the several counties
directing them to collect from the depository banks the interest
upon all public deposits of their counties, including all interest
on school funds, city and town funds, township and county
funds, from the date of said order, and it shall then become the
duty of all depository banks to pay such interest to the county
treasurers and the county treasurers of the several counties shall
so collect such funds in accordance with such order and shall
remit the same to the treasurer of state. The diversion of such
funds shall continue until such claims are paid and it shall then
be the duty of the treasurer of state to discontinue such diver-
sions of interest on state funds and collection of interest on
other funds as herein provided, and to so notify the county
treasurers of the various counties fixing in such notice the date
of such termination."

The court found that the deposits in question in said bank
were all made prior to the first day of October, 1925, and that,
after the 7th day of October, 1925, the county treasurer made
withdrawals from the said bank before the same closed, in the
total sum of $12,476.53, leaving the balance on hand of $71,-
724.60.

The question is whether or not, upon this record, the county
treasurer is entitled to an order on the state officials for the
payment from the sinking fund of the excess of the deposit above
the $50,000 authorized by the resolution of October 7th.

The county treasurer, as a witness, testified that he was
informed of the resolution passed by the board of supervisors on
the 7th day of October, 1925, and over objection, testified that,
from that time until the bank closed, on November 24, 1925, he
was making efforts to reduce the balance on deposit in the bank,
and that his object was to reduce it as rapidly as possible, to
comply with the resolution of October 7, 1925. He also testified,
over objection, that it would not be practicable to withdraw
$25,000 or $30,000 at one time, his explanation being that "it
might embarrass a bank at times." He said he made a gradual

reduction of the deposit in question, "as rapidly as he felt conditions would warrant."

Chapter 173 and Chapter 174 of the Acts of the Forty-first General Assembly were enacted for the purpose of creating an emergency state sinking fund for public deposits, and to provide a scheme to secure speedy payment of deposits of said county, township, municipal, and school corporations, where a bank in which said deposit is made is placed in the hands of a receiver. It was never intended that all public deposits could or should be paid from said fund. Certain limitations were placed about the conditions under which the state or a public corporation could participate in said funds in the event that the bank in which said funds were placed became insolvent and was placed in the hands of a receiver. The statutes of the state provide for the deposit of public funds by the state treasurer (Section 139, Code of 1924), school treasurer (Section 4319), county treasurer (Section 7404), and city treasurer (Section 5651). In each instance, it is provided that a governing board must approve the designated depository. Section 1, Chapter 173, provides for the creation of a separate fund in the office of the treasurer of state, to be known as the state sinking fund for public deposits. Said fund is made available, by the express terms of the statute, *only* "when such deposits have been made by authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds."

The original authority of the board of supervisors in the instant case authorized the deposits of public funds by the county treasurer in the bank in question to the amount of $84,000. The deposit involved in this action was originally made under this resolution, and was then a legal deposit. The question turns upon the effect of the resolution of the board of October 7, 1925. By said resolution the former resolution authorizing the county treasurer to deposit public funds to the amount of $84,000 in said bank was expressly repealed. At the same time, and by said resolution, it was provided that public funds might be deposited by said treasurer in said bank in a sum not in excess of $50,000. It must be conceded that the amount at that time on deposit in the bank in excess of $50,000 had been rightfully deposited there in the first instance, under the orig-

inal resolution of the board. The act of the board of super-
visors in repealing the former resolution and in adopting the
new resolution cannot, we think, be construed as anything other
or different than an express order by the board of supervisors
upon the county treasurer to reduce the deposit in the bank to
the maximum provided by the new resolution, to wit, $50,000.
It must be assumed that the board of supervisors acted ad-
visedly, and knew at the time that the county treasurer had on
deposit in said bank under the original resolution a sum in
excess of $50,000. In any event, the order could not be construed
*only* to have reference to deposits to be made in the future. It
expressly repealed the former resolution, and if nothing further
had been done by such repeal, it would, in effect, have been a
refusal to designate the bank as a depository of any public funds
from and after that date. The funds would then have to be
withdrawn. The resolution limiting the amount of deposit to
$50,000 must be construed to apply to *any* deposits then existing
in the bank or to be deposited thereafter. It was an express limi-
tation upon *any* deposit of county funds in that bank. To hold
that $71,000 of a total of $84,000 authorized was legally depos-
ited under the original resolution, and could *all* be left in the
bank because so legally deposited, and that the new resolution
applied only to *future* deposits, and allowed $50,000 of such de-
posits, would work out a possible legal deposit of the total of the
original authorization of $84,000 (if the same had been made),
and of $50,000 in the future, under the new resolution, or a
possible legal deposit of $134,000. Such a result is obviously
not one intended by the board of supervisors, and such a con-
struction is unwarranted. It therefore follows that, from and
after the adoption of the resolution of October 7th, the bank was
an authorized depository of county funds only to the amount of
$50,000. The duty of the county treasurer at said time was to
withdraw said public funds in excess of $50,000 from the said
bank. It was no longer a legal depository of funds in excess of
$50,000. The original resolution had been repealed. The expla-
nation of the county treasurer that to have withdrawn said
excess would have "embarrassed the bank" is hardly a sufficient
justification to authorize the county to now withdraw said ex-
cess of deposits from the public sinking fund of the state. It is
true that the treasurer withdrew a certain amount of said fund

during the more than six weeks that intervened from the adoption of the resolution until the closing of the bank. There is no showing in the record that the treasurer made any demand on the bank for all of said fund, or attempted to withdraw all of said fund in excess of $50,000, as authorized by the resolution of October 7th. There is no record of any refusal at any time on the part of the bank to pay the full amount of said deposit in excess of said sum of $50,000. The deposit was in no sense a time deposit. The entire deposit, from the time it was placed in the bank, was subject to be drawn upon by county warrants at any moment.

The sinking fund from which this payment is sought to be made is, in a very proper sense, a trust fund. It is one created by legislative enactment, and set apart for the express purpose of protecting public funds lawfully deposited "by authority of and in conformity with the direction of the local governing council or board." All of the different public corporations enumerated by the statute that place their public funds in approved depositories are interested in the administration of this state sinking fund. No public corporation can participate in such sinking fund unless it has complied with the provisions of the statute permitting it to so participate. The interests involved are so widespread that the administration of said sinking fund should be strictly guarded, with meticulous care, as a trust fund. Unauthorized deposits cannot be allowed to remain in banks because their withdrawal "might embarrass the bank," and because participation in the state sinking fund is anticipated. The statute must be reasonably construed. Following the order of the board of supervisors fixing the limit of the deposit of county funds in the bank at $50,000, the treasurer was entitled to a reasonable time, consistent with the ordinary course of business, to withdraw the amount of funds in excess of the limit fixed by the board. The lapse of six weeks and the gradual withdrawals in small amounts so as "not to embarrass the bank" cannot be construed to be an attempt to comply with the order of the board of supervisors within a reasonable time. Public funds cannot be left on deposit in failing banks, in direct contravention of the order and direction of the governing board of the municipal corporation, merely because their withdrawal might "embarrass the bank," and because the county may look

for recoupment from the state sinking fund. A bank that accepts public funds as a depository accepts them subject to demand for the full amount at any time. The act providing for the creation of a sinking fund was not intended to operate as a device to assist banks that were in financial "embarrassment," by leaving public funds on deposit with them. Such was not the purpose of the Brookhart-Lovrien act.

We are constrained to hold that the trial court erred in holding that the county was entitled to participate in the state sinking fund to the extent of the deposit in the bank in excess of $50,000, which was the limit fixed by the resolution of the board on October 7, 1925. Such excess deposit was an unauthorized deposit at the time that the bank was placed in the hands of a receiver, and reimbursement for said funds from said state sinking fund cannot be allowed. The decree of the court awarding the right to participate in said state sinking fund to the extent of the deposit in excess of $50,000 was unauthorized, and so much of said order is—*Reversed.*

STEVENS, DE GRAFF, VERMILION, and ALBERT, JJ., concur.

EVANS, C. J., and MORLING, J., dissent.