L. A. ANDREW, State Superintendent of Banking, Appellee, v. IOWA SAVINGS BANK OF ESTHERVILLE et al., Appellees; R. E. JOHNSON, Treasurer of State, et al., Appellants.

SEPTEMBER 28, 1928.

*John Fletcher*, Attorney-general, *Earl F. Wisdom*, Assistant Attorney-general, for appellants.

*F. J. Kennedy* and *Heald, Cook & Heald*, for intervener, appellee.

WAGNER, J.—The treasurer of the city of Estherville was the assistant cashier of the Iowa Savings Bank, located in said city.

The statutory law with reference to the deposit of city funds is found in Section 5651 of the Code of 1924, which provides:

"Treasurers of cities and towns shall, with the approval of the council as to place and amount of deposit, by resolution entered of record, deposit city and town funds in any bank or banks in the city or town to which the funds belong, at interest at the rate of not less than two and one-half per cent per annum on ninety per cent of the daily balances, payable at the end of each month. Interest shall accrue to the benefit of the general fund."

On April 21, 1925, the city council adopted a resolution, by which they designated the Iowa Savings Bank as the sole depository of the city funds, and fixed the maximum of said deposit at $150,000. On November 2, 1925, the city council repealed the aforesaid resolution, and adopted what is denominated a "substitute resolution," which provides:

"It is hereby resolved by the city council of the city of Estherville, in Emmet County, Iowa, that the Iowa Savings Bank of Estherville, Iowa, First Trust & Savings Bank of Estherville, Iowa, and First National Bank of Estherville, Iowa, be and they are hereby approved as depositories of all city and

466

other public funds coming into the hands of James W. Ghoslin, city treasurer, and the said city treasurer is hereby authorized and directed to use said banks as depositories and the total amount of public funds to be deposited now or hereafter in all of said banks shall not exceed the sum of $150,000 at any one time and the said city treasurer is hereby ordered and directed to keep said public funds in said depository banks prorated and deposited as nearly as practicable as set out below: 50% in the Iowa Savings Bank; 25% in the First Trust & Savings Bank; 25% in the First National Bank, and the maximum to be deposited in each of said respective banks shall be as follows: Iowa Savings Bank, $50,000; First Trust & Savings Bank, $50,000; First National Bank, $50,000.''

At the time of the adoption of the repealing and substitute resolution, the said treasurer had on deposit in said bank the sum of $95,644.40. Thereafter, on account of various payments made, said amount was reduced to $93,931.

It appears that, on November 19, 1925, the county treasurer, in making his distribution, deposited in the aforesaid bank, of funds belonging to the city, the sum of $15,919.64, which went into the account of the city treasurer in said bank, and which deposit was unknown to the city treasurer until the afternoon of November 20th. The bank closed on November 24, 1925, and soon thereafter, the superintendent of banking was appointed receiver. The treasurer in his petition asks for the establishment of his claim against the receiver of the bank and against the sinking fund for the entire amount on deposit at the time of the closing of the bank. The court allowed the claim in its entirety as a depositor's claim, deducting the amount of the payments made subsequent to November 2d from the amount on deposit that day, leaving the sum of $93,931, and established said amount as a claim against the sinking fund, decreeing that the auditor of state should issue therefor his warrant upon said sinking fund in the hands of the treasurer of state, payable to the city treasurer.

There is no complaint because of the allowance of the entire amount of the claim as that of a depositor. There is no complaint by the state officers as to the establishment of the sum of $50,000 against the sinking fund, their contention being that the allowance against said fund in any amount in excess of $50,000

was unwarranted. The city treasurer contends that the entire amount on deposit at the time when the bank closed should have been established against the sinking fund, or at least the amount of payments made by the city treasurer subsequent to November 2d should not have been deducted from the amount on deposit on that date, and that the least amount for which the sinking fund is liable is the sum of $95,644.40, instead of $93,931.

We find no merit as to the matters presented by the appeal of the city treasurer.

It is manifest from the record that, at the time of the adoption of the repealing and substitute resolution, the bank was struggling between life and death. The treasurer was informed as to said resolution. Without objection, the treasurer testified that he endeavored to comply with the resolution, and was unable to do so; that he took up the matter with the bank, through its president and cashier, and endeavored to pay the money, as per the resolution; that the bank did not have sufficient cash or reserve between November 2d and November 24th to permit him to pay the money. It was stipulated at the trial:

"That at no time from November 2d to the time the bank closed on November 24th was the bank in a position to reduce the balance of the city treasurer of Estherville; that they could not and would not have paid on that account to diminish it; that it was impossible for them to do so, on account of their financial condition, and at all times from November 2d to the time the bank closed the bank had cash assets below the legal requirement."

It is fairly discernible from the record that the action of the city council in adopting the substitute resolution, which, in effect, asked for the withdrawal from the bank of practically $45,000, hastened the collapse of the bank.

The question for our determination is as to whether or not, under the record as made, the sinking fund is liable for only $50,000, or for the entire amount on deposit at the time of the adoption of the substitute resolution, less the subsequent payments made by the city treasurer. The statute creating the sinking fund is known as the Brookhart-Lovrien Act, and is found in Chapters 173 and 174 of the Laws of the Forty-first General Assembly. It provides:

"There is hereby created in the office of the treasurer of state a separate fund to be known as the state sinking fund for public deposits and the purpose of said fund shall be to secure the payment of their deposits to state, county, township, municipal, and school corporations having public funds deposited in any bank in this state *when such deposits have been made by authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds.*" (The italics are ours.)

Was the amount established by the trial court against the sinking fund, to wit, $93,931, made up of deposits made by authority of and in conformity with the direction of the city council? There can be no question that, at the time when the deposits were made, there was authorization by the council therefor, by reason of the resolution of April 21, 1925. Can it be successfully asserted that, under the facts and circumstances as disclosed by the record, there was no authorization for the deposits for which there was authority at the time when made? The state officers rely on *Andrew v. Iowa Sav. Bank,* 203 Iowa 1089. In that case, the deposit was by the county treasurer. It is shown therein that said officer testified that it would not be practicable to withdraw $25,000 or $30,000 at one time, his explanation being "that it might embarrass a bank at times;" and that he further testified that he made a gradual reduction of the amount in question, "as rapidly as he felt conditions would warrant." We there said:

"The explanation of the county treasurer that to have withdrawn said excess would have 'embarrassed the bank' is hardly a sufficient justification to authorize the county to now withdraw said excess of deposits from the public sinking fund of the state."

There was no showing in that case, as in the instant case, that it was impossible, on account of the bank's financial condition, to pay the amount on deposit in excess of $50,000. Under the record in the cited case, we said:

"Following the order of the board of supervisors fixing the limit of the deposit of county funds in the bank at $50,000, the treasurer was entitled to a reasonable time, consistent with the

ordinary course of business, to withdraw the amount of funds in excess of the limit fixed by the board."

It is obvious, under the record in the instant case, that the last quotation from the cited case is not applicable. Under the record, there could not, at any time after the adoption of the repealing and substitute resolution, have been payment of the amount on deposit in excess of the sum of $50,000.

Something is claimed by the state officers because of the fact that no checks were drawn in favor of the other banks, and presented for payment, and demand thus made. Under the conceded facts, they would not and could not have been honored, had checks been drawn and presented; and it is a well recognized rule that equity does not require the doing of useless things.

The statutory law provides: "*When such deposits have been made by authority of and in conformity with the direction of the local governing council,*" etc. The deposits prior to November 2, 1925, were made by authority of and in conformity with the directions of the city council. The action of that body in adopting the repealing and substitute resolution, thus seemingly requiring the city treasurer to perform an impossibility, did not *ipso facto* make illegal the deposits previously and legally made.

Without further discussion, we hold that, under the record in this case, the city treasurer is entitled to the establishment against the sinking fund of the amount on deposit on November 2, 1925, less payments subsequently made. This was the view of the trial court.

The decree of the trial court is correct, and the case is affirmed on both appeals.—*Affirmed.*

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, MORLING, and KINDIG, JJ., concur.