STATE OF IOWA for use of CITY OF ESTHERVILLE, Appellee, v. ENOCH H. HANSON, County Treasurer, et al., Appellants.

No. 40054.

JUNE 23, 1930.

· *Price & Burnquist*, for National Surety Company, appellant.

*N. J. Lee*, for Enoch H. Hanson, appellant.

*F. J. Kennedy* and *Heald, Cook & Heald*, for appellee.

FAVILLE, J.—Appellant Hanson is the county treasurer of Emmet County, Iowa. The appellant National Surety Company is the surety on his official bond. One Ghoslin was the city ·  treasurer of the city of Estherville during the time involved in this action, and prior to April 1, 1926. Ghoslin was also assistant cashier of the Iowa Savings Bank, prior to the time that said bank closed, on November 25, 1925. It is stipulated or established by the evidence that, on or about the 17th day of November, 1925, the appellant Hanson, as county treasurer, had collected taxes belonging to the appellee city in the sum of $15,919.64. On or about the said 17th day of November, 1925, said Hanson delivered to the city clerk of said city of Estherville a written notice, to the effect that said county treasurer had in his hands the said sum of money belonging to the several funds of said city, as shown upon said notice. Said

notice contained the statement: "The sum will be paid to your treasurer upon the return of the attached order properly signed, countersigned, and endorsed." There was attached to said notice a form of order to be signed by the mayor and city clerk, describing the said funds and directing their payment to the treasurer of said city. This order, however, was not signed or presented until long subsequent to the matters involved in this litigation, to wit, on January 19, 1928, at which time one Hunt was treasurer of said city. When said order was so presented to appellant Hanson, payment thereof was refused. At the time that said notice of taxes so collected by the county treasurer was delivered to the city clerk, the mayor and said clerk did not attempt to sign said order for the payment of said funds to the city treasurer, but, after consultation with each other, withheld the signing or presentation of said order. However, on or about the said 19th day of November, 1925, without having received any order from the mayor and city clerk directing him so to do, the appellant Hanson took said funds in the form of checks to the said Iowa Savings Bank, and delivered the same to one Stockdale, an officer of said bank, with the request that he deliver the same to the city treasurer, Ghoslin. The next day, Hanson received a receipt from Ghoslin for said money. It appears that the amount of said fund was placed by Ghoslin to his account as treasurer of said city in the said Iowa Savings Bank. As stated, said bank closed on November 25, 1925. It further appears that, on April 21, 1925, the city council of said city had designated the said Iowa Savings Bank as a depository of city funds, fixing the maximum deposit at $150,000. On November 2, 1925, the city council of said city repealed said resolution, and limited the amount to be deposited in the Iowa Savings Bank to $50,000. The evidence shows that the Iowa Savings Bank was in fact insolvent at the time this deposit was made, and closed on the 25th of November.

I.  Section 6229, Code, 1924, is as follows:

"Before the third Monday of each month, the county treasurer shall give written notice to the mayor of each municipality in the county of the amount collected for each fund up to the first day of that month, including the amounts collected to pay bonds issued to pay the costs of public improvements for which

special assessments have been levied and certified, and the mayor of each municipality shall draw an order therefor in favor of the city treasurer, countersigned by the clerk or auditor of the municipality, upon the county treasurer, who shall pay such taxes to the treasurers of the several municipalities only on such order.''

Appellants contend that said statute is directory only, and that, the city treasurer having in fact received the funds from the county treasurer, it is immaterial that the funds were not paid to the city treasurer on the order of the mayor and city clerk. In other words, it is the contention of the appellants that, the funds collected as municipal taxes by the county treasurer having reached their ultimate destination,—to wit, the city treasurer,—it is immaterial how the funds arrived in the possession of said officer, notwithstanding the provisions of said statute. Appellee contends that the statute is mandatory.

The legislature obviously had some purpose and intention in adopting this statute. Section 1126 of the Revision of 1860 provided that the county treasurer should pay over to the treasurer of any municipal corporation the money received by him arising from taxes belonging to said municipal corporation. This statute was carried into the Code of 1873, Section 498, and the same system of direct payment by the county treasurer to the treasurer of the municipality was adopted in the Code of 1897, as Section 902. However, the legislature, by Chapter 29 of the Acts of the Thirty-first General Assembly, which became effective July 4, 1906, amended the former statute directing the county treasurer to pay over to the treasurer of the municipality all taxes collected by him, and enacted a new statute substantially in the form of Section 6229 of the Code of 1927. It is thus apparent that the legislature intended to abolish the system by which the county treasurer could pay municipal taxes directly to the city treasurer, and to provide in lieu thereof the system set forth in Section 6229. By the repeal of the former statute, which would have permitted the doing of the very thing that was done in the instant case, and substituting an entirely new method therefor, it is clear and plain that the intention of the legislature was to abolish the former method and substitute the new plan in its stead. What reasons may have actuated the legislature, and

what abuses, if any, may have arisen under the former statute, it is not necessary for us to determine; but it is significant that the legislature, in expressly doing away with the former method of payment directly from the county treasurer to the city treasurer, had a clear and obvious purpose to render the new method mandatory. It expressly provided that such payment "shall" be made *"only"* on the order of the mayor and the city clerk.

Whether a statute is mandatory or directory depends upon the intention of the legislature, to be ascertained from a consideration of the existing law, the changes made, the nature and object of the statute, and the consequences of construing it one way or the other, as well as from the language used.

The method provided by the existing statute operates as a check, and enables the mayor and the city clerk to be fully advised as to the amounts that have been collected in the several funds, to make proper distribution thereof, and to keep an accurate check upon the funds collected by the county treasurer and the funds deposited with the treasurer of the municipality.

It cannot be successfully contended, in view of the history of this legislation and the obvious purpose and intent of the legislature and the express provisions of the law, that the present statute is merely directory, and not mandatory. In the statute the legislature used the word "shall," instead of the word "may," or other similar expression, and provided explicitly that the payment shall be made *"only"* on the order of the mayor and city clerk. It is difficult to suggest how language could be more imperative than this. It is to be remembered that the legislature, in enacting this statute, was dealing with the very important matter of the handling of public funds. A former method, permitting the county treasurer to pay directly to the city treasurer, had been in vogue for many years. The legislature advisedly abolished that method, and adopted a new method, and by its very language made it imperative and mandatory that this method should be followed. The maxim *"expressio unius est exclusio alterius"* is applicable here. Where a statute directs the performance of certain things in a particular manner, it forbids by implication every other manner of performance. *District Twp. of City of Dubuque v. City of Dubuque,* 7 Iowa 262. The statute uses the word "shall," which is generally construed to be mandatory. *Jefferson County Farm Bureau v. Sherman,*

208 Iowa 614. Furthermore, it explicitly provides that payment shall be made "*only*" upon the order of the designated officers.

We reach the conclusion that the statute is mandatory and that the payment by the appellant Hanson to the city treasurer without the order of the mayor and city clerk, as provided by the statute, was unwarranted and illegal. As bearing somewhat upon the question involved, see *State for use of City of Grinnell v. Carney*, 208 Iowa 133; *Springer v. County of Clay*, 35 Iowa 241; *People ex rel. Burns v. Bender*, 36 Mich. 195; *School Dist. No. 9 v. School Dist. No. 5*, 40 Mich. 551; *Andrus v. Parish Board of Directors*, 108 La. 386 (32 So. 420); *McCormick v. Bay City*, 23 Mich. 457; *Reeve v. City of Oshkosh*, 33 Wis. 477; *Raymond v. People*, 2 Colo. App. 329 (30 Pac. 504); *City of Hillyard v. Carabin*, 96 Wash. 366 (165 Pac. 381).

II. The appellants contend that the appellee ratified the acts of the city and county treasurers, and that the appellee is estopped by its conduct from maintaining the present action.

It is at least a very doubtful question if the officers of the city could ratify an illegal act of the county treasurer in the handling of funds belonging to the city. The illegal acts of public officials in violation of statutory requirements ought not to be subject to ratification by the acts of other public officials. Mandatory statutes involving public affairs, and especially the handling of public funds, should not be abrogated by the acts of public officials in recognition of the illegal acts of other public officials. Furthermore, under the record in this case, there was no ratification. The claimed ratification consists in the fact, as disclosed by the record, that the city treasurer, Ghoslin, filed a claim with the receiver of the bank and against the state sinking fund for the establishment of the full amount of all the city funds on deposit in the failed bank. It is true that, after Ghoslin ceased to be the city treasurer, the appellee employed counsel, and prosecuted said claim. The cause was appealed to this court. See *Andrew v. Iowa Sav. Bank*, 206 Iowa 464. A portion of the funds was established against the state sinking fund. The particular item involved in this action was not established against the state sinking fund. It appears that the city council was not advised of the fact with regard to the manner in which said deposit was made, until the facts de-

veloped during the trial of the instant case. The theory and belief of the city officials, outside of the city treasurer, were that the funds had been deposited by the county treasurer in said bank, and that they in fact belonged to the city. Upon the trial of this case, the facts developed with regard to the manner in which the funds had been delivered to the city treasurer by the county treasurer, whereupon an amendment was filed to appellee's petition, and this action proceeded to determination. Upon this record, there was no ratification of the act of the appellant Hanson in delivering said funds to the city treasurer in the manner heretofore described, nor did the act of the city council, under the facts, constitute a waiver of the claim of the city against the appellant county treasurer for the wrongful disposal of the funds which he had collected for the city.

The fact that appellee has begun an action against the city treasurer, which action is pending and undetermined, does not  constitute an election of remedies, under the record in this case. We fail to find either a legal ratification, waiver, estoppel, or an election of remedies, shown as a bar to appellee's right of recovery.

III. It is claimed by appellants that the wrongful act of the appellant Hanson in delivering the fund in question to the city treasurer without the statutory order was not the proximate cause of the loss of said fund to the city by the subsequent failure of the bank. The lower court found that the cause of the loss of the fund to the appellee city was the act of the appellant Hanson in wrongfully surrendering the custody of the city's funds, so that they could be misapplied or misplaced by the city treasurer, Ghoslin. It was the wrongful act of appellant Hanson that set in motion the chain of events that led to the loss of the fund in question. It is apparent, under the record, that, at the time this transaction took place, the Iowa Savings Bank was in a serious financial condition. Ghoslin was the assistant cashier of said bank, and appellant Hanson was friendly to it. The evidence discloses that the mayor and the city clerk believed said bank to be in a precarious condition, and that they intentionally withheld the signing of the order presented to them by the appellant Hanson, because of a belief that,

if they did sign it, the city treasurer might deposit the same in the said bank, and that the funds might eventually be lost. This was one reason why the mayor and the city clerk refused to make such order. The appellant Hanson, ignoring the statutory requirement that he should have such an order from the mayor and the city clerk, placed the funds in the hands of the city treasurer, who placed them in said bank shortly before the bank failed, and at a time when the bank was in fact insolvent. It was the act of the appellant Hanson in thus unlawfully taking the funds which belonged to the city, and which were properly in his custody, and placing them in the hands of Ghoslin, who deposited them in the bank which shortly thereafter failed, that was the proximate cause of the loss to appellee. But for the act of Hanson in so unlawfully surrendering the funds belonging to the city, they would have remained in his custody, and the city would have been protected under his bond. If we assume that the question of proximate cause was properly in the case, as argued by counsel, the court did not err in holding that the proximate cause of the loss to the appellee city was the act of the appellant Hanson in disposing of the funds in an unlawful manner.

The cause was tried in equity. A careful examination of the record constrains us to hold that the conclusion of the trial court, both as to the facts and the law governing the case, was correct, and the decree must be, and it is,—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur. ·