STATE OF IOWA EX REL. E. C. HALBACH, County Attorney, Appellee, v. GEORGE CLAUSSEN, Appellee; HUBERT UTTERBACK, Appellant.

No. 42064.

SEPTEMBER 27, 1933.

J. M. Parsons, Wm. F. Riley, W. J. Keefe, Leland S. Forrest, and James M. Stewart, for appellant, Utterback.

E. C. Halbach, County Attorney, for the State.

Ernest L. Miller and John E. Purcell, for appellee Claussen.

STEVENS, J.—This action was instituted by the county attorney of Clinton county under the authority and provisions of chapter 531 of the Code (section 12417 et seq.). It is provided by section 12417, which is a part of said chapter of the Code of 1931, that:

"A civil action by ordinary proceedings may be brought in the name of the state in the following cases:   1. Against any person unlawfully holding or exercising any public office or franchise within this state, or any office in any corporation created by this state."

Section 12419 further provides that:

"Such action may be commenced by the county attorney at his discretion, and must be so commenced when directed by the governor, the general assembly, or a court of record."

The action was commenced in the district court of Clinton county, which is the county of the residence of the defendant Claussen. Appellant first responded to the notice served upon him in Polk county, which is the county of his residence, by filing a motion for a change of the place of trial. 'It is alleged in the motion that the defendant Claussen is in truth and in fact the plaintiff; that the action was commenced at his instigation and procurement and in pursuance of a demand made upon the county attorney by appellee's attorneys that such action be commenced; that the record of the

proceedings showed that the method of bringing the action and each step therein was a subterfuge designed by appellee Claussen and his attorneys to obtain jurisdiction of the cause of action in Clinton county. The motion was overruled, and thereupon appellant filed answer to the petition of relator and a reply to the answer of appellee Claussen previously filed.

The facts upon the trial of the main issues were almost wholly stipulated by all of the parties. A recital of the material facts thus stipulated will make clear the nature and scope of the controversy without any extended statement at this time of the issues joined.

E. A. Morling, one of the judges of the Supreme Court of Iowa, died on October 15, 1932. Thereafter and on October 18th, appellant was placed in nomination by the state central committee of the Democratic Party as a candidate to fill the vacancy caused thereby. The nomination was thereafter certified to the secretary of state. On the same or the following day, the appellee Claussen was nominated as a candidate to fill such vacancy by the state central committee of the Republican Party and such nomination was thereafter certified to the secretary of state. Following the nomination of appellee by the Republican state central committee, he was appointed by the Governor of the State of Iowa to the vacancy caused by the death of Judge Morling. The names of the respective candidates were printed upon the ballots and voted for and against at the general election held on November 8th. The result of such election was that appellant received 472,922 votes and appellee 377,375 votes. Upon a canvass of the votes, the state board of canvassers found that appellant was duly elected to fill the vacancy caused by the death of Judge Morling and a certificate of election was issued to him. Appellant subsequently qualified by taking the oath prescribed by law and entered upon the performance of the duties of a judge of the Supreme Court.

I. We shall first dispose of the exception of appellant to the ruling of the court on the motion for a change of the place of trial. It is, of course, admitted that appellant is a resident of Polk county and appellee of Clinton county. The grounds of the motion are that the action is not prosecuted in good faith by the relator, but that same was instituted as a mere subterfuge and at the instance and procurement of Claussen and his attorneys and that appellee is in reality the plaintiff. He is designated in the pleadings as the defendant. The action was not commenced by direction of the Gov-

ernor, the General Assembly, or a court of record. Section 12419 of the Code, however, confers full authority upon the county attorney to, in° his discretion, prosecute the action. It appears that at a meeting of the Bar Association of Clinton county, a motion or resolution was adopted favoring the commencement of an action to adjudicate Claussen's right to hold the office as judge of the Supreme Court under and by virtue of the commission issued to him by the Governor. Claussen testified that he had nothing to do with this action, took no part therein, and that he at no time solicited or caused the attorneys now representing 'him to solicit the relator to commence the proceedings. The grounds of the motion are not sustained by proof. It is not claimed that if Claussen was, in fact, the defendant in the action, appellant could not be joined as a party and the action be prosecuted in Clinton county. Obviously, the motion was properly overruled.

██ II. The major propositions, however, relied upon by appellant for reversal, present questions largely of statutory construction.

We are dealing at this time, primarily, with elections to fill vacancies in office caused by the death, resignation, or otherwise occurring during the term for which an officer has been elected.

The provisions of the Constitution of this state in relation thereto are article IV, section 10, which is as follows:

"Vacancies. When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy, by granting a commission, which shall expire at the end of the next session of the General Assembly, or at the next election by the people," and article XI, section 6, which is as follows:

"How vacancies filled. In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office, shall hold until the next general election, and until their successors are elected and qualified."

It is provided by section 504 of the Code that general elections for state, district, county, and township officers shall be held throughout the state on Tuesday next after the first Monday in November of each even-numbered year. Provision is made by statute for the

nomination of candidates for office to be filled at each general election. The machinery set up for this purpose is ample.

The legislature has also made provision for filling vacancies occurring during the term for which an officer shall have been elected. Section 1157 of the Code is as follows:

"If a vacancy occurs in an elective office in a city, town, or township ten days, or a county office fifteen days, or any other office thirty days, prior to a general election, it shall be filled at such election, unless previously filled at a special election."

Had the death of Judge Morling occurred more than thirty days prior to November 8, 1932, this controversy could not well have arisen. His death having occurred on October 15th, less than thirty days intervened until the date fixed by law for the holding of the next general election.

Much of the contention of counsel for the respective parties is based upon differences of opinion as to the proper interpretation of section 1157, Code of 1931. All parties agree that this section of the Code authorizes the filling of vacancies occurring in office thirty days prior to the next general election. It is not only conceded, but it is the contention of counsel for appellant, that if a vacancy occurs in the office of a state officer thirty days or more prior to the next ensuing general election, the duty to fill such vacancy thereat is mandatory. It is the further contention of counsel that if a vacancy occur in a state office less than thirty days, permissible authority is given to fill the vacancy at the next ensuing general election. The contention of counsel that the duty to fill the vacancy, if it occurs thirty days or more prior to the general election, at such election is mandatory, is not exactly clear. Upon whom is it mandatory? There is no power resident in any one to compel any political party to nominate candidates for office. Of course, it is assumed that political parties desirous of maintaining their existence and members thereof in office will nominate candidates for any office for which authority exists to be filled at the next general election. No mandatory duty, however, upon any person or organization to do so exists. The statute in question authorizes the filling of a vacancy in a state office occurring thirty days prior to the next ensuing general election. The statute is mandatory only in the sense that it provides in definite language when a vacancy in a state office may be filled at the next ensuing general election. Clearly, it does

not, in terms at least, authorize nominations to be made and candidates to be voted for at such general election if the vacancy occurs less than thirty days prior to the date on which such election is to. be held. If the duty to cause a vacancy to be filled is at any time mandatory upon some person or political organization, then is a permissive right implied if a vacancy occurs less than thirty days prior to the date fixed for a general election?

It is a general rule of law early adopted in this state that when the language of a statute is explicit and definite, the words used govern. District Township of City of Dubuque v. City of Dubuque, 7 Iowa 262; First National Bank of Davenport v. Davies, 43 Iowa 424; State, for use of Estherville, v. Hanson, 210 Iowa 773, 231 N. W. 428. In the course of the opinion in the Dubuque case, the court said:

"The expression of one thing is frequently the exclusion of another; and if, by a law or constitution, a thing is to be done in a particular manner or form, this, as we have seen, includes a negative, that it shall not be done otherwise.  *  *  *  This rule, it is also said, is further modified by another, that where the means for the exercise of a granted power are given, no other, or different means can be implied, as being more effectual or convenient."

Section 1157 contains neither ambiguity of expression nor uncertainty as to its scope or purpose. The Constitution does not provide machinery for making nominations or holding elections. It was not designed for that purpose. The machinery, in obedience to the constitutional mandate, has been set up by the Legislature, and no one in this case challenges the validity of the provisions made thereby. The Legislature having acted, the machinery adopted is exclusive. If the construction for which appellant contends were to be adopted, the statute would be, at most, directory and practically useless. No doubt, the time fixed for filling vacancies in the various offices referred to in section 1157 was to give ample time for the electors to act and to inform themselves as to the issues and persons involved or to be considered. This is consonant with the provisions of section 506 of the Code, which require that a proclamation of the holding of a general election designating the offices to be filled by the electors shall be issued by the Governor at least thirty days prior to such election. A similar proclamation must be issued before any special election may be held. Section 509, Code.

■ But numerous sections of the Code relating to nominations of candidates for various state, county, and township offices and to the printing of ballots are called to our attention as supporting appellant's theory of a permissive right to nominate a candidate to fill a vacancy in a state office occurring less than thirty days prior to the next ensuing general election. We shall now give attention to these sections of the Code.

Section 606 provides that vacancies in nominations made in the primary election, when such vacancies occur after the holding of a county, district, or state convention, shall, generally, be filled by the party central committee appropriate to such action.

Section 609 provides that nominations occasioned by vacancies in office after the holding of county, district, or state conventions, or prior thereto, but too late to be made thereat, shall be made by the appropriate party committee except when the vacancy is in the office of Senator of the United States and occurs thirty days prior to the holding of the regular November election, the nomination shall be made by convention as provided in case of vacancies in nominations for such office.

Section 615 provides that nominations made in case of vacancy and nominations made by state, district, and county conventions shall, under the name and place of residence and post office address of the nominee and the office to which the nominee is nominated and the name of the political party making the same, be forthwith certified to the proper officer by the chairman and secretary of the convention, or by the committee, as the case may be, and, if received in time, the names of such nominees shall be printed on the official ballot.

It is provided by section 655-a4 that:

"Objection to the legal sufficiency of a certificate of nomination or to the eligibility of a candidate may be filed by any person who would have the right to vote for a candidate for the office in question. Such objections must be filed with the officer with whom such certificate is filed and within the following time:

"1. Those with the secretary of state, not less than twenty days before the day of election.

"2. Those with other officers, not less than eight days before the day of election.

"3. In case of nominations to fill vacancies occurring after said twenty or eight days, as the case may be, or in case of nominations

made to be voted on at a special election, within three days after the filing of the certificate."

Section 669 provides that nominations for the office of judge of the Supreme or district court shall be certified to the secretary of state in the same manner that nominations for other state officers are certified.

Section 670 provides that objections to the legal sufficiency of such certificate of nomination or eligibility of the candidate shall be governed by the statute already referred to.

Sections 776, 777, 778, 779, and 780 are as follows:

"776. The name supplied for. a vacancy by the certificate of the secretary of state, or by nomination certificates or papers for a vacancy filed with the county auditor, or city or town clerk, shall, if the ballots are not already printed, be placed on the ballots in place of the name of the original nominee.

"777. If vacancies be certified after the ballots have been printed, new ballots, whenever practicable, shall be furnished.

"778. When it may not be practicable, after a vacancy has been certified, to have new ballots printed, the election officers having charge of them shall place the name supplied for the vacancy upon each ballot used before delivering it to the judges of election.

"779. If said ballots have been delivered to the judges of election before a vacancy has been certified, said auditor or clerk shall immediately furnish the name of such substituted nominee to all judges of election within the territory in which said nominee may be a candidate.

"Pasters with the name of the substituted nominee thereon shall likewise be furnished the voter with his ballot when possible to do so.

"780. Judges of election having charge of the ballots shall, in the case contemplated in the preceding section, place the name supplied for the vacancy upon each ballot issued before delivering it to the voter, by affixing a paster, or by writing or stamping the name thereon."

We do not understand counsel to contend that any of the foregoing sections purport, in terms at least, to authorize nominations to fill vacancies to be made where such vacancy occurs less than thirty days prior to the next general ensuing election, but that, when given

proper weight and effect 'in the interpretation of section 1157, permissive authority is shown to do so.

All of the foregoing sections, except section 609, which is without possible ambiguity, relate either to vacancies occurring in nominations, the placing of names of candidates on the official ballot, or objections to certificates of nomination and the eligibility of candidates to become such or to hold office. None of them purport to create or give authority to hold an election. They all proceed upon the hypothesis that such authority already exists. If this thought be kept constantly in mind, there can be no conflict in the terms and provisions of any of the statutes in this state relating to elections, nominations, or the placing of names of candidates upon official ballots. It is a necessary conclusion that the authorization of the several statutes relied upon by counsel presupposes the already existing authority to hold an election to fill an office for a full term or to fill a vacancy. See chapter 37, Code 1924 (sections 649-655), chapter 33, Laws 24th General Assembly.

Particular emphasis is sought to be given by counsel to section 655-a4. If the effect for which counsel contends be given to this statute, then nominations to fill vacancies occurring at any time before the general election is held may be filled even if it be necessary that the names of the candidates be placed upon the ballot by the use of pasters. Counsel does not contend for the conclusion stated, but such would seem to be the logical result of the contention urged. Section 655-a4 does not relate to, or in any sense authorize, nominations to be made. The subject of the section makes this clear. It provides that if there be objections to the legal sufficiency of a certificate of nomination or to the eligibility of a candidate, the same may 'be filed in the proper office and within the time designated. The obvious purpose of this section is to, so far as possible, obviate any question as to the legality of the certificate of nomination or the availability of a candidate to fill the office to which he has been nominated. A certificate may be informal or so irregular as, in the absence of some such provision, to render the election void. Likewise, the election of a candidate for any office, who is ineligible to hold the same, would be invalid. This section of the Code makes easily ascertainable the eligibility of the candidate before the election is held.

Again, it must be obvious that the nominations referred to are of candidates for offices or for vacancies therein to be filled at any

ensuing general election. The only sections of the Code which prescribe the time within which and which authorize the filling of a vacancy in a state office at a general election are sections 1157 and 1155, Code 1931. The only authority granted by section 1157 is to fill a vacancy in a state office occurring thirty days before a general election. No election can be held without statutory authority. This no one does, or can, deny.

■ But, it is further contended by counsel that there is such inconsistency in the terms and provisions of the foregoing sections, when considered together, as to, by implication, repeal the so-called mandatory provisions of section 1157. The contention is clearly unsound. None of the sections referred to deal with the subject dealt with in sections 1156 and 1157. It is the law that repeals by implication are not favored and will be held to occur only when the court is driven thereto by the necessities of the situation. Central Iowa Railway Co. v. Board of Supervisors, 67 Iowa 199, 25 N. W. 128, Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177, Diver v. Savings Bank, 126 Iowa 691, 102 N. W. 542, 3 Ann. Cas. 669.

A subsequently enacted statute dealing with the same subject, when properly construed, may be held to repeal by implication some or all of the provisions of a prior enactment. To hold that statutes dealing merely with the procedure to be followed in making nominations and filling vacancies occurring therein by implication operates to repeal a statute dealing with an entirely different subject would be to clearly violate the canon of interpretation stated above. Repeal by implication in such situation so broad and sweeping as would be necessary cannot be favored. As was said by the Supreme Court in State v. Simon, 20 Or. 365, 26 P. 170, 172:

" 'It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus* than to attempt to do so by judicial construction.' People v. Woodruff, 32 N. Y. 364. Courts cannot supply omissions in legislation, nor afford relief, because they are supposed to exist. To adopt the language of Mr. Justice Woods in Hobbs v. McLean,

117 U. S. 579, 6 S. Ct. 870 [29 L. Ed. 940]: 'When a provision is left out of a statute, either by design or mistake of the legislature, the courts have no power to supply it. To do so would be to legislate, and not to construe.' "

We are clear that no portion of section 1157 has been repealed by implication. The provisions of the constitution quoted supra fix the period of time for which an appointee to a state office shall serve. It is provided thereby that such appointee shall hold until the next general election and until his successor is elected and qualified. These provisions of the Constitution are directed to the Legislature, whose duty it is to make provision for carrying their purpose into effect.

As was said by the Supreme Court of Pennsylvania in Commonwealth v. Maxwell, 27 Pa. 444:

"A constitution cannot execute itself. It is a frame or plan of government. It lays down certain great and fundamental principles, according to which the several departments it calls into existence are to govern the people; but all auxiliary rules which are necessary to give effect to these principles must, from the necessity of the case, come from the legislature."

The Legislature of this state, in recognition of the power thus conferred and in fulfillment of the duty implied therein, has enacted numerous statutes fully meeting the constitutional requirements.

Attention at this time, and in connection with the constitutional requirements, should be directed to section 1155 of the Code, which is as follows:

"An officer filling a vacancy in an office which is filled by election of the people shall continue to hold until the next regular election at which such vacancy can be filled, and until a successor is elected and qualified. Appointments to all other offices, made under this chapter, shall continue for the remainder of the term of each office, and until a successor is appointed and qualified."

The authority granted by this section is in strict harmony with the constitutional requirement. It likewise provides that an officer filling a vacancy, which is to be filled by the election of the people, shall hold until the next general election at which the vacancy can be filled. It is further provided by this statute that appointees

to all other offices made under chapter 59 (section 1145 et seq.) shall continue for the remainder of the term of such office and until a successor is elected and qualified.

The next general election means the next general election at which, in pursuance of law, a vacancy may legally be filled. Under all of the authorities called to our attention dealing with the subject, it is held that this does not necessarily mean the next ensuing general election, but the election at which the vacancy can be legally filled. State v. Superior Court, 140 Wash. 636, 250 P. 66; State v. Simon, 20 Or. 365, 26 P. 170; Sawyer v. Haydon, 1 Nev. 75; State v. Jepson, 48 Nev. 64, 227 P. 588; State v. Minor, 105 Neb. 228, 180 N. W. 84.

■ The Constitution, as stated, is in no sense self-executing. Its mandates directed to the Legislature must be obeyed in accordance with the provisions made thereby for that purpose. The only authority granted by the Legislature for filling vacancies occurring in state offices is to be found in the sections quoted. The authorization to fill a vacancy occurring in an elective state office at the next ensuing general election is when such vacancy occurs *thirty days* or more previous to a general election. In whatever sense this statute is to be held mandatory, it definitely and in specific terms refers only to vacancies occurring thirty days prior to the general election. This operates as a limitation upon the authority given. None of the provisions of this statute have been, by implication or otherwise, repealed. It in no sense violates the Constitution, but in specific terms responds to the mandate thereof.

It is our conclusion at this point that no vacancy in the office of judge of the Supreme Court which could be legally filled at the general election on November 8, 1932, existed, and that, as a necessary conclusion, the election to fill such pretended vacancy is void and without effect.

■ The question now naturally arises: "For what term may appellee continue to hold said office?" The Constitution and statutes are plain on this subject. Under these provisions, he will, unless by some act or conduct on his part, as claimed by appellant, he has waived his right to do so, hold the office until the next ensuing general election and until his successor shall have been elected and qualified.

It is, however, contended on behalf of appellant that no issue is involved in this case as to the time for which appellee shall hold

1092

the office. This contention would seem to overlook certain allegations of the answer of appellee and the general denial contained in the reply of appellant to the answer. The action was brought to determine the title under which appellee claimed to hold the office. That was the issue to be tried in the action. We think there can be no doubt as to the soundness of the decree of the district court at this point.

III. It is further contended by appellant that appellee did not properly qualify for the office by filing his commission in the office of the secretary of state, as required by section 1154 of the Code, which provides:

"Appointments under the provisions of this chapter shall be in writing, and filed in the office where the oath of office is required to be filed."

The authority of one appointed by the Governor to fill a vacancy in a state office is conferred by the commission issued to him. Noncompliance with section 1154 would be an irregularity only which could be complied with at any time and which would not affect the validity of the commission. This question arose many years ago, and the holding of the Supreme Court of the United States in Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60, would seem to still be sound. The contention is without merit.

IV. Appellant, in his reply to the answer of Claussen, pleaded estoppel in three subdivisions thereof. It is stated in the argument of counsel that the count upon which appellant relies at this point is the one pleaded in division 5 of such reply. The specific allegations of this count are that appellee, by reason of his failure to withdraw as a candidate for the office of judge of the Supreme Court at the general election, and by reason of his failure to follow the method provided by law to test the validity of such nomination and certificate of nomination, acquiesced therein and waived the right to object to the results of the election. In addition to the foregoing, the division reaffirms all matters alleged in the pleading.

First, as to estoppel: The nomination of appellant preceded that of appellee. It is obvious, therefore, that he did not, in becoming a candidate and accepting the nomination of his party as a candidate to fill the supposed vacancy, rely upon any act or conduct of appellee. If there was no vacancy which could be legally filled at the general election in November, 1932, it must be obvious to

every one that appellee could have done nothing that would operate as an estoppel against him. If, on the other hand, the names of both appellant and appellee were legally upon the ballot to be voted for or against, then certainly no estoppel could arise in favor of appellant. Indeed, none would have been necessary, as appellant admittedly received a large majority of the votes cast at such election. Conversely, if the names of both appellant and appellee were not lawfully placed upon the ballot because there was no vacancy to be filled at the election, then, even if it were conceded that appellee by some act or conduct forfeited his right to serve out the unexpired term as an appointee to the office, it would in no sense avail appellant. In such case, appellant would not have obtained legal title to the office if appellee's name had not been placed upon the official ballot. The most that could be claimed in such situation would be that a new vacancy in the office was created—a vacancy for which appellant was not a candidate. To render the election valid, a vacancy must have existed at the time the respective nominations were made which, under the provisions of the statute, could be filled at the last general election. Upon the theory of the estoppel pleaded, just when did appellee forfeit his right to the office? If at all, it must have been after the nomination of appellant, which preceded that of appellee. All parties concede that appellee was entitled, under his commission issued by the Governor, to keep the office until the general election at which the vacancy caused by the death of Judge Morling could be legally filled. Appellee has not resigned. Even if it were conceded that by permitting his name to be printed upon the official ballot he thereby forfeited his right to the office and that a vacancy arose because thereof, it would not be the vacancy which appellant was nominated to fill. The relator has not appealed.

It is significant at this point that the appointment of appellee to the vacancy, which all agree on the date thereof existed, did not precede but followed the purported nomination of him by the Republican State Central Committee. If, therefore, there was any abandonment on his part, it must have been of the nomination and not of his right to hold the office under the Governor's appointment. Appellee testified that the nomination by the Republican State Central Committee was without his knowledge or consent and that he never at any time by any affirmative act accepted the nomination. It could hardly be reasonably contended that if appellee was legally

1094

in possession of the office he owed a duty to appellant to in some way renounce the act of the Republican State Central Committee or to take action to test the validity of appellant's place on the ballot. This was not in any sense necessary and the fact that he did not do so avails appellant nothing.

The decree of the district court adjudged that appellee was legally in possession of and entitled to perform the duties of judge of the Supreme Court until the general election in 1934. This adjudication is binding upon the state and all persons except such as are before us on this appeal. Appellant must win, if at all, upon his own title and right to the office, and not to any weakness in the title of appellee. One of the grounds provided by statute upon which an action in quo warranto may be based is that a public officer has done or suffered some act which works a forfeiture of his office. This ground does not appear in the petition, and it is not claimed by relator that any such ground, in fact, existed.

It is our conclusion that neither the plea of estoppel nor waiver is proven, or, if established, are, upon any theory, available to appellant, or give him title to the office.

We have, because of the importance of this case, both to the litigants and to the public, endeavored to discuss and dispose of every proposition urged by appellant on this appeal. The question before the court is one of law and must be disposed of as such. The interpretation placed upon the statutes involved permits but one conclusion, and that is that the judgment and decree of the district court should be in all respects affirmed. It is so ordered.— Affirmed.

ALBERT, C. J., and EVANS, KINDIG, ANDERSON, and DONEGAN, JJ., concur.

KINDIG, J. (concurring)—At the general state election in 1930, the Honorable Edgar A. Morling, of Emmetsburg, was duly elected a justice of the Supreme Court of Iowa, for the term commencing January 1, 1931, and ending December 31, 1936. Mr. Justice Morling, after being thus elected, duly qualified for the office and assumed the duties thereof. He continued to thus assume such duties until his death, on October 15, 1932. The death of Justice Morling created a vacancy in the office.

Section 1146 of the 1931 Code provides:

"Every civil office shall be vacant upon the happening of either of the following events: * * * 4. The * * * death of the incumbent * * *."

Because of such vacancy in office, the Honorable Dan W. Turner, then Governor of Iowa, on October 19, 1932, appointed the defendant-appellee, the Honorable George Claussen, to fill such vacancy. A certificate was duly issued to the appellee Claussen, and thereupon he duly qualified for the office and assumed the duties thereof.

On October 17, 1932, in response to a notice from the Governor of Justice Morling's death, together with the suggestion that a vacancy in the office was thereby created, the Democratic State Central Committee, of Iowa, nominated the defendant-appellant, the Honorable Hubert Utterback, as a candidate to be elected a justice of the Supreme Court of Iowa at the ensuing general election, to wit, November 8, 1932, to fill the vacancy alleged to have been created and existing because of Justice Morling's death.

Thereafter, because of a like communication from the Governor, the Republican State Central Committee met and, it is claimed, over the protest and without the consent of the appellee Claussen, nominated him as a candidate for Justice of the Supreme Court, to be elected at such November election. The appellant Utterback's name was placed on the Democratic ballot, and the appellee Claussen's name was put on the Republican ballot.

As a result of the November election, the appellant Utterback received the greater number of votes for the office of Justice of the Supreme Court to fill the vacancy alleged to have been created by the death of the late Justice Morling. Therefore, the appellant Utterback, over the appellee Claussen's protest, was declared elected. Then, in accordance with the result of canvassing the votes, a certificate of election was issued to the appellant Utterback by the secretary of state, and thereafter he attempted to qualify for the office by taking the statutory oath.

Following the November election, both the appellant Utterback and the appellee Claussen claimed the office, but the appellant Utterback, over the protests of the appellee Claussen, commenced serving as a justice of this court.

So, on December 2, 1932, thereafter, the county attorney of Clinton county, Iowa, commenced the present proceedings in quo warranto for the purpose of testing the right of the appellee Claus-

sen to hold the office of justice of this court. A notice was served upon the appellee Claussen, and he appeared in said proceeding. Later the appellee Claussen, on December 13, 1932, served a notice of said suit upon the appellant Utterback. Whereupon the appellant Utterback, a resident of Polk county, appeared in said cause and filed a motion for change of place of trial from Clinton to Polk county. On a hearing of the cause in Clinton county, the motion for change of venue was overruled, and the appellant Utterback filed an answer to the merits of the controversy. A trial was then had on the merits, which resulted in a judgment in favor of the appellee Claussen. By this judgment, the appellee Claussen was declared to be a justice of this court. Therefore the appellant Utterback appealed. No appeal was taken by the state.

For convenience, then, the appellant Utterback hereafter will be referred to as the "appellant," and the appellee Claussen will be called the "appellee".

On this appeal it is contended by the appellant: First, that Justice Morling having died twenty-four days before the general election, it was legal, under the Constitution and statutes of this state, to fill such vacancy at that election; second, that the defendant-appellee, by his conduct, waived his right to hold the office under his appointment from Governor Turner, and elected to be a candidate at the general election; third, that the appellee did not properly qualify under his appointment because he did not file his commission in the office of the secretary of state; and, fourth, that he was entitled to have the cause removed to the county of his residence, and therefore the district court erred in overruling the motion for a change of venue.

In answer to the foregoing contentions, it is claimed by the appellee: First, that under the Constitution and laws of this state, an election to fill the vacancy caused by Justice Morling's death could not be held because such vacancy occurred within thirty days of the election; second, that he did nothing that in the premises could be said in any way to be a waiver or estoppel of his right to claim and have the office under the appointment; third, that he properly qualified so far as the law requires, and that the statutory demand for the filing of the commission with the secretary of state is merely directory; and, fourth, that the district court properly denied the appellant's motion for a change of venue.

These contestants, as before indicated, have both served on this

court. We are called upon to decide in this proceeding which of them is entitled to the office. The task is not free from embarrassment. A decision, however, does not rest upon our preference for either, or our idea of the superior fitness of the one over the other. Our duty is to determine which of these contestants, under the law, is entitled to the office. One of these contestants is a Democrat and the other is a Republican. If the law prefers one contestant on an occasion of this kind, the party affiliation of the other becomes entirely immaterial. At this time the Republican claimant may not legally say that he, because of his party affiliation, is more desirable than the Democratic contestant; nor can the Democrat legally declare that, because of his Democracy, he has a better right to the office than the Republican contestant. For as it was said in Holy Writ: "What then, are we better than they?" "No, in no wise." On another occasion, the following Biblical declaration was made: "All things come to all alike."

It is plain, then, that our further duty is to determine the law that applies to the case.

I. There is a controversy between the appellant and the appellee over the question of whether a vacancy existed in the office at the general election on November 8, 1932. If there were no vacancy within the contemplation of the law, then there could be no legal election. An election to fill a vacancy only can be held when there is a vacancy. In order to determine the existence or nonexistence of a vacancy at the time of the election, it is necessary to consider certain constitutional and statutory provisions. The appellee, beyond peradventure of doubt, was appointed by Governor Turner to fill the vacancy created by the death of Justice Morling. So, then, if a vacancy existed in that office at the time of the general election, it was because the office held by the appellee under the appointment expired by operation of law, thereby giving rise to a vacancy which could be filled at the election.

Section 1155 of the 1931 Code provides:

"An officer filling a vacancy in an office which is filled by election of the people shall continue to hold until the next regular election at which such vacancy can be filled, and until a successor is elected and qualified. * * *"

Section 1157 of the same Code continues:

"If a vacancy occurs in an elective office in a city, town, or township ten days, or a county office fifteen days, or any other office thirty days, prior to a general election, it shall be filled at such election, unless previously filled at a special election."

A dispute arises between the parties concerning the meaning of the foregoing sections of the statute when considered in conjunction with certain constitutional provisions and other statutory enactments. No claim is made by the appellant that section 1157 of the Code, above quoted, is unconstitutional. The appellant, however, says that his construction of the section should be adopted in order to make the statute conform to constitutional requirements. It is asserted by the appellee that the election in question could not be held, in view of section 1157, to fill the vacancy created by the death of Justice Morling, because that death occurred within thirty days of the general election. Therefore, the appellee argues that he may hold the office under the appointment from Governor Turner until the next general election after the election under consideration.

According to the appellant, section 1157 should be read (omitting unnecessary parts) as though it were enacted as follows:

"If a vacancy occurs in an elective office * * * thirty days prior to a general election, it shall be filled at such election, unless previously filled at a special election, and if such vacancy occurs less than thirty days prior to a general election, it may be filled at such election, if nomination be made in time to print the name of the nominee upon the official ballot."

There is no express statutory language sustaining the appellant's contention at this juncture. In order to arrive at this conclusion, the appellant theorizes on constitutional and other statutory enactments, as above explained. Obviously, too, the appellant, disregards the express language of section 1157 in his attempt to bring about the result for which he contends.

Section 1157 associates the ten-day period with city, town, or township offices. Again, it connects the fifteen-day period with county offices. Then all other offices, including state offices, are coupled with the thirty-day period. Any other construction of the section would destroy the apparent intention of the Legislature. While section 1157 is silent concerning the filling of vacancies which occur within the thirty days before the election, yet, under familiar rules of

construction, it is apparent that by the language used the Legislature intended to prohibit the filling of vacancies occurring within the thirty-day period; that is to say, the Legislature provided that vacancies occurring before the commencement of the thirty-day period shall be filled at the next general election, and by implication it declared that vacancies occurring thereafter shall not be filled at such election. Otherwise section 1157 would become absurd. It would generally be conceded that, because of constitutional and statutory provisions, a vacancy occurring before the commencement of the thirty-day period preceding the general election could be filled at the next regular election. There would be no use for the limitations contained in section 1157 unless the legislature intended thereby to prohibit the filling of vacancies which occur within the thirty-day period. Hence, as before suggested, section 1157 would be entirely surplusage if it did not constitute a prohibition against filling the vacancy later than the period indicated therein. Therefore, we hold that section 1157 contains a prohibition against holding the elections to fill the vacancies later than during the period indicated.

A reason manifestly exists for the statutory classification contained in section 1157. In a city, town, or township election, the machinery of the election could be easily manipulated in a brief time, while a longer period would be required to manipulate the machinery of a county election. State elections naturally would require a still longer allotment of time to manage the machinery of such an election. To fit the necessity of the occasion, therefore, the statute provided for the different times in which the respective elections might be held to fill vacancies in the offices named.

But it is said by the appellant, as before indicated, that constitutional and other statutory provisions necessitate the construction claimed by him. After carefully studying these constitutional and statutory provisions, we are constrained to hold that the contention of the appellant is not well-founded. For the purpose of indicating the basis of our conclusion, however, we will continue a consideration of the appellant's contentions. Section 10, article IV, of the Constitution of Iowa provides:

"When any office shall, from any cause, become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have power to fill such vacancy, by

granting a commission, which shall expire at the end of the next session of the General Assembly, or at the next election by the people."

Section 6, article XI, of the Constitution declares:

"In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office, shall hold until *the next general election, and until their successors are elected and qualified.*" (Italics are ours.)

Because of these constitutional provisions, it is argued by the appellant that the appointment of the appellee lasted only until the ensuing general election held November 8, 1932. Such an election, according to the appellant, is the "next general election" or "next election" named in the constitutional provisions. This is especially true, the appellant maintains, because there was sufficient time in which to hold an election to fill the vacancy. An election in fact was held, he declares, and an enormous number of votes cast thereat. So, he says, under the circumstances the constitutional provisions require that there was a vacancy in the case at bar, and that it should be filled at said general election. Such a construction of the Constitution would make section 1157 useless so far as the election before the thirty-day period is concerned. If, as argued by the appellant, the Constitution requires the election to fill the vacancy at the general election under consideration, then section 1157, so far as the election within the thirty-day period is concerned, would become unconstitutional. There is no provision in the Constitution for an election notice, or for other election machinery. The framers of the Constitution, as will hereinafter appear, left it to the Legislature to provide for such notice and such election machinery.

It is obvious that the framers of the Constitution were familiar with the method of holding elections in America. They understood the machinery necessary to hold an election to fill a vacancy, including notices, etc. When referring to the "next election" or the "next general election," the framers of the Constitution obviously intended to refer to the next general election at which a vacancy could be filled according to the established custom and usage in America. As a part of this custom and usage, a sufficient notice is essential:

.20 Corpus Juris, 96, section 80; State of Iowa ex rel. Lewis v. .Young, 4 Iowa 561; Secord v. Foutch, 44 Mich. 89, 6 N. W. 110; Odell v. Rihn et al., 19 Cal. App. 713, 127 P. 802; State ex rel. Sampson v. Superior Court for King County, 71 Wash. 484, 128 P. 1054, Ann. Cas. 1914C, 591; State ex inf. Brown v. Sengstacken et al., 61 Or. 455, 122 P. 292, Ann. Cas. 1914B, 230; State ex rel. Anderson v. Port of Tillamook et al., 62 Or. 332, 124 P. 637, Ann. Cas. 1914C, 483; State v. City of West Plains, 163 Mo. App. 166, 147 S. W. 163; State ex rel. Connaughton v. Staley et al., 90 Kan. 624, 135 P. 602; Guernsey et al. v. McHaley, County Judge, 52 Or. 555, .98 P. 158; Weisgerber v. Nez Perce County, 33 Idaho 670, 197 P. 562; People ex rel. Anderson v. Czarnecki, 312 Ill. 271, 143 N. E. 840.

Notice of a special election is required by the Iowa statutes, .in accordance with the theory of elections generally. See sections .505, 506, 507, 508, and 509 of the 1931 Code.

"The evident intent of the statute in this respect is to give the voters reasonable opportunity to become advised of the time and place of the election, and of the purpose for which it is called; and .to that end, and to prevent undue haste" a notice is given. Crawford .v. School Twp. of Beaver, 182 Iowa, 1324 (local citation, 1329), .166 N. W. 702, 704.

No notice was given in the case at bar.

The framers of the Constitution, as before indicated, understood .election machinery generally, and knew the purpose and desirability of a notice. Likewise, these framers of the Constitution understood the machinery necessary to be operated in holding elections to fill a vacancy. Time is required to make nominations, print ballots, pre- pare and give notice, make official communications, and meet other .preliminaries for an election. It is not a question of how hurriedly or in what rush an election can be held, but rather the point to be determined is whether the thirty-day period provided in the statute must be declared unreasonable, when considered with the aforesaid constitutional provisions. Obviously, the framers of the Constitu- tion contemplated a legal, valid, and regular election. They did not .have in mind a slipshod, hit-and-miss election; that is to say, it is .not contemplated by the Constitution that a chance shall be taken on occasions of this kind in holding an election without a notice, with the hope that perhaps, if certain events occur (for instance,

that there will be cast a large and decisive vote), there will be a valid election, where otherwise there would be an invalid one. In the case contemplated, the subsequent event suggested, and not the original legal steps taken, would create the situation where an election might be declared valid. What the framers of the Constitution had in mind was an election that would be valid in the beginning as well as at the end. They contemplated an election which would be valid under all circumstances. Consequently, these framers were familiar with the fact that notice and time were essential to a valid and regular election. So, when enacting the constitutional provisions above quoted, they intended, by the use of the words "the next election" or "the next general election", to indicate the next election or the next general election that could be held on due notice with ample time for the manipulation of the election machinery, as contemplated by the laws relating to the filling of vacancies in offices generally.

The argument is made by the appellant that although notice was not given, yet the election in fact may be valid where no fraud is perpetrated. There was no fraud in the election under consideration. Hence the appellant concludes that the election was valid. Dishon v. Smith, County Judge, 10 Iowa 212; Moore v. City of Perry, 119 Iowa 423, 93 N. W. 510; Rafferty et al. v. Town of Clermont et al., 180 Iowa 1391, 164 N. W. 199; State of Iowa ex rel. Cook et al. v. Birdsall, 186 Iowa 129, 169 N. W. 453.

But, as before indicated, the framers of the Constitution did not contemplate an irregular election which might under some circumstances be held valid, as indicated in the cases last above cited. Their thought was that the vacancy should be filled at an election that would be valid in the first place, as well as after the happening of certain events. The question confronting us is not whether, if an election had been authorized because a vacancy existed, the election would have been valid although there may have been irregularities. Here the question is whether in fact there was a vacancy and there could be an election under any circumstances. Clearly under section 1157 there could be no such election. Under the plain provisions of the Constitution, when considered in the light of history and the experiences of men generally at the time of the adoption of that fundamental document (see Gallarno v. Long, State Auditor, 214 Iowa 805, 243 N.W. 719), it is clear that the election contemplated was one that could be held after due notice and in

conformity with reasonable requirements of elections generally. Because of the very necessity of things, all vacancies occurring before the next general election could not be filled at such election. A vacancy might occur a few hours before the election, as was the case in Patten v. Haselton, 164 Iowa 645, 146 N. W. 477, 51 L. R. A. (N. S.) 226. Such vacancy could not possibly be filled at the next election. We would underestimate the statesmanship and foresight of the framers of the Constitution if we were to hold that they did not contemplate such a situation. As before indicated, these framers of the Constitution, realizing the situation just mentioned, did not, in their wisdom, contemplate a hit-and-miss, slipshod, irregular election, but rather those men had in mind an election held in accordance with the good usages and customs of the peoples generally when the Constitution was adopted. So, in determining what the framers of the Constitution meant by "the next election" and "the next general election," it is necessary to take into consideration the experiences of mankind in holding elections. When such experiences are considered, it becomes self-evident that the framers of the constitution intended, by the use of the words "the next election" and "the next general election," an election which is preceded by a due notice and ample time for the proper operation of the election machinery.

The Legislature, then, in passing section 1157, we must assume understood these constitutional principles and endeavored to comply therewith. Plainly the Constitution contemplates that the Legislature may prescribe notice and inaugurate election machinery. There is no provision in the Constitution, as before suggested, for notice or the supplying of the necessary election machinery, including nominations. Hence, "it is for the Legislature * * * to provide the notice for, and the method of, conducting elections, general or special." State ex rel. Ferguson v. Superior Court for King County et al., 140 Wash. 636, 250 P. 66, local citation 70 and 71.

See, also, section 1, Article XII, Iowa Constitution; Commonwealth v. Maxwell, 27 Pa. 444; People v. Budd, 114 Cal. 168, 45 P. 1060, 34 L. R. A. 46; In re Supreme Court Vacancy, 4 S. D. 532, 57 N. W. 495; State v. Jepsen, 48 Nev. 64, 227 P. 588; State v. Minor, 105 Neb. 228, 180 N. W. 84; State v. Gilliam, 93 Wash. 248, 160 P. 757; Watkins v. Venable, 99 Va. 440, 39 S. E. 147.

Some reference is made in argument to State v. Thoman, 10 Kan. 191. That case, however, is readily distinguishable from the case at bar because of the facts involved and the constitutional provisions considered therein. Because, then, in Iowa the constitutional provision is not full and complete in itself, supplemental legislation is necessary, as indicated by the foregoing cases. This must be true in view of the fact that the framers of the Constitution contemplated a proper notice and the orderly operation of election machinery. No claim is made by the appellant that section 1157 is unconstitutional, but, as before said, he does contend that if the construction is given thereto as asked by the appellee the legislation will become unconstitutional.

Clearly, however, section 1157 is entirely consistent with the Constitution. State v. Superior Court (140 Wash. 636, 250 P. 66, local citation 70 and 71), supra. An election held in the state of Iowa, considering the area of the state and the population, can well require a thirty-day period for notice, preparation, and the operation of the necessary election machinery. Time is required to understand the issues and the caliber and character of the men who are candidates. This court should not hold an act of the Legislature unconstitutional unless such unconstitutionality plainly, clearly, and palpably appears. Gallarno v. Long (214 Iowa 805, 243 N. W. 719), supra; Loftus v. Department of Agriculture, 211 Iowa 566, 232 N. W. 412.

There is no doubt, under the circumstances, that section 1157, construed as we have construed it above, does not infringe upon the constitutional provisions before mentioned, but rather it. harmonizes therewith and carries out the purposes and intentions thereof. That is true because the thirty-day limitation furnishes the time for the notice and the operation of the necessary election machinery, as contemplated by the Constitution under the theory above explained. Such construction is entirely consistent with section 1155 of the 1931 Code. Assuming, without deciding, that section 1155 applies to the facts in the case at bar, it is apparent that said section must be construed harmoniously with section 1157. Under that construction, the words appearing in section 1155, to wit, "at which such vacancy can be filled," must be construed with the limitation contained in section 1157. Harmony in statutory construction demands this result. See Waugh v. Shirer, 216 Iowa 468, 249 N. W. 246.

So, unless other statutory provisions require a different construction of section 1157, there is no basis for the appellant's contention. The appellant, at this place, relies on section 609 of the 1931 Code. That section provides:

"Nominations occasioned by *vacancies in office* when such vacancies occur after the holding of the county, district, or state convention, or when they occur before said convention, but too late to be made thereby, shall be made by the party central committee for the county, district, or state, as the case may be, except that when the vacancy is in the office of senator of the United States, and occurs thirty days prior to the holding of the regular November election, nomination shall be made by convention as provided in case of vacancies in nominations for such office."

Section 609, just quoted, is a part of chapter 36 of the 1931 Code. This chapter is headed: "Nominations by Primary Election." Manifestly, section 609 does not purport to fix the occasion on which an election can be held. It does not provide for the holding of an election. Section 1157 is not modified, or in any way changed, by section 609. As already stated, section 1157 is a prohibition upon the time for holding elections to fill vacancies; while section 609 has to do with certain nominations. A nomination is never permissible unless there is to be an election. The nomination contemplated by section 609 presupposes an election at which the nominee can become a candidate. There is nothing in section 609 to indicate that the nomination there contemplated shall be for an election prohibited by section 1157. Section 609 is general in its terms and refers to different kinds of nominations for which different limitations are fixed. Consistency demands our holding that section 609 is entirely consistent with, adds nothing to, and takes nothing from, section 1157. Unless nominations are occasioned by vacancies in office, section 609 has no application. Consequently, if, in the case at bar, as previously indicated, under section 1157 and the constitutional provisions before considered, no vacancy occurred in the position on the Supreme Court sought by the appellant and the appellee, then section 609 has no application.

After considering the appellant's argument in all its details, then it becomes manifest that it is not well founded. Clearly, as before several times repeated, the constitutional provisions under consideration contemplate a legal election preceded by a proper no-

tice, and the operation of the necessary election machinery. People v. Col., 132 Cal. 334, 64 P. 477. In that case, reading on page 479 of 64 P., it is said:

"The phrase 'next regular election' is the next election held conformable to established rule or law."

See, also, People ex rel. Mattison v. Nye, 9 Cal. App. 148, 98 P. 241; In re Supreme Court Vacancy, 4 S. D. 532, 57 N. W. 495; Wainwright et al., County Election Board, v. Fore, 22 Okl. 387, 97 P. 831.

Under this theory of the law, there was no vacancy in appellee's office on November 8, 1932, at the time of the general election. See People v. Hardy, 8 Utah 68, 29 P. 1118, local citation 1119; State v. Gilliam, 93 Wash. 248, 160 P. 757. This is true because of the limitations contained in section 1157. These limitations are consistent with the spirit and contemplation of the Constitution, as previously explained. Because there was no vacancy at the aforesaid election, there could in fact be no election. State v. Birdsall, 186 Iowa 129, 169 N. W. 453.

Therefore, the appellee still holds his office under the appointment by Governor Turner, and may continue to hold it until the next general election.

II. A suggestion is made, however, that the people voted and therefore, because the people did thus vote, an election was held. When thus voting, the people did so without constitutional or statutory authority.

The right to vote is a political, as distinguished from a civil or property, right. Coggeshall v. City of Des Moines, 138 Iowa 730, local citation 737, 117 N. W. 309, 128 Am. St. Rep. 221; Walls et al. v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; Morris v. Colorado Midland Railway Co., 48 Colo. 147, 109 P. 430, 31 L. R. A. (N. S.) 1106, 139 Am. St. Rep. 268, 20 Ann. Cas. 1006; State ex rel. Shepard et al. v. Superior Court for King County, 60 Wash. 370, 111 P. 233, 140 Am. St. Rep. 925. It was said in the Coggeshall case (138 Iowa 730), supra, reading on page 737, 117 N. W. 309, 311, 128 Am. St. Rep. 221:

"The right to vote is not a natural or inherent right, but exists only as conferred by the Constitution of the state or some statute."

As previously indicated, the electors of this state cannot vote unless authorized by the Constitution or some legislative enactment. 10 American and English Encyclopedia of Law (2d) 563; State ex rel. Edwards v. Ellison et al., 271 Mo. 123, 196 S. W. 751; Norton v. Coos County et al., 113 Or. 618, 233 P. 864; Williams et al. v. Glover et al. (Tex. Civ. App.), 259 S. W. 957; Levering et al. v. Board of Supervisors of Elections of Baltimore City, 129 Md. 335, 99 A. 360; State ex rel. Swan v. Kozer, 115 Or. 638, 239 P. 805; State ex rel. Everding v. Simon, 20 Or. 365, 26 P. 170; Kimberlin v. State ex rel. Tow, 130 Ind. 120, 29 N. E. 773, 14 L. R. A. 858. 30 Am. St. Rep. 208; People ex rel. Lynch v. Budd, 114 Cal. 168, 45 P. 1060, 34 L. R. A. 46; State ex rel. McGee v. Gardner, 3 S. D. 553, 54 N. W. 606; State ex rel. Bridges v. Jepsen, County Clerk, 48 Nev. 64, 227 P. 588; State ex rel. Fish v. Howell, 59 Wash. 492, 110 P. 386, 50 L. R. A. (N. S.) 336. See State v. Birdsall (186 Iowa 129), 169 N. W. 453, supra.

Although the electors voted to fill the alleged vacancy, that vote alone will not make the election legal if, in fact, there was no vacancy and therefore could be no legal election to fill the alleged vacancy. See cases above cited. An illegal and unauthorized election will not become authorized just because the electors voted at the election. See cases above cited, and Koehler v. Hill, 60 Iowa 543, 14 N. W. 738, 15 N. W. 609; State v. Executive Council, 207 Iowa 923, 223 N. W. 737; State ex rel. Bailey v. Brookhart, 113 Iowa 250, 84 N. W. 1064; State v. Weir, 33 Iowa 134, 11 Am. Rep. 115; State v. Beneke, 9 Iowa 203; Geebrick v. State of Iowa, 5 Iowa 491; Santo et al. v. State of Iowa, 2 Iowa 165, 63 Am. Dec. 487.

There was no vacancy at the general election in the office in question, as previously indicated. Therefore, there could be no legal or authorized election. Without statutory or constitutional authorization for the election, the result became a nullity and the appellee continued to hold his office under the appointment from the Governor. Furthermore, he may continue to hold such office in the future until the next general election, unless, by some omission or commission, as claimed by the appellant, the appellee abandoned the office or waived his right to hold the same under the aforesaid appointment.

III. Under this part of his argument, the appellant claims that the appellee, in fact, never qualified for the office under the ap-

pointment because he did not file his commission in the office of the secretary of state. Section 1077 of the 1931 Code provides:

"The bonds and official oaths of public officers shall, after approval and proper record, be filed: 1. For all state officers, elective or appointive, except those of the secretary of state, with the secretary of state."

In his pleadings, the appellant alleges the appointment and qualification of the appellee for the office under consideration. The appointment was made by the Governor, attested by the secretary of state, and impressed with the great seal of the state. The Governor issued a proper commission, as required by law. Sections 1152 and 1154 of the 1931 Code. At an early day, the Supreme Court of the United States had occasion to pass upon a similar question. Marbury v. Madison, 1 Cranch 137, 161, 2 L. Ed. 60. There it is said by Chief Justice Marshall:

"When all the requisites have been performed which authorize a recording officer to record any instrument whatever, and the order for that purpose has been given, the instrument is, in law, considered as recorded, although the manual labour of inserting it in a book kept for that purpose may not have been performed. In the case of commissions, the law orders the secretary of state to record them. When, therefore, they are signed and sealed, the order for their being recorded is given; and whether inserted in the book or not, they are in law recorded. * * * It is therefore decidedly the opinion of the court, that when a commission has been signed by the President, the appointment is made; and that the commission is complete, when the seal of the United States has been affixed to it by the secretary of state."

So in the case at bar, when the secretary of state attested the commission signed by the Governor, and placed the state seal thereon, he should have recorded it, and if he did not make a record of such recording in law, nevertheless the commission is recorded.

It is also claimed by the appellant that the appellee "failed to file objections with the secretary of state of the nomination of himself" and of appellant. Because the appellee did not file such objection, it is now claimed by the appellant that he waived his right to hold the office under the appointment, or abandoned the same and chose to become a candidate at the election. We do not desire our

discussion of this proposition to be considered as an implication that the election before discussed would become valid because of the estoppel, waiver, or abandonment urged against the appellee.

A finding was made by the district court that the appellee is not barred from holding the office because of estoppel. No appeal has been taken by the state. Consequently, the state is bound by that adjudication. Even though the appellee were, under some circumstance, not entitled to hold the office, that fact would not authorize the appellant to hold the same. The appellant must obtain the office on the strength of his own title, rather than on the weakness, if any, in the title of the appellee. State ex rel. Freeman v. Carvey, 175 Iowa 344, local citation 355, 154 N. W. 931; Wooton v. Wheeler et al., 149 Ky. 62, 147 S. W. 914, local citation 915.

But a consideration of the statute involved will disclose the fact that there is no weakness in the appellee's title to the office because he failed to object to the sufficiency of the certificates of nomination by the Central Committee, or to the eligibility of the appellant to the office. Section 655-a4 of the 1931 Code contains the following provision:

"Objection to the legal sufficiency of a certificate of nomination or to the eligibility of a candidate may be filed by any person who would have the right to vote for a candidate for the office in question. Such objections must be filed with the officer with whom such certificate is filed and within the following time: 1. Those with the secretary of state, not less than twenty days before the day of election. 2. Those with other officers, not less than eight days before the day of election. 3. In case of nominations to fill vacancies occurring after said twenty or eight days, as the case may be, or in case of nominations made to be voted on at a special election, within three days after the filing of the certificate."

It is to be noted in the beginning that the objection contemplated by the statute may be filed by any person who would have a right to vote. In other words, the statute did not cast upon the appellee a duty that was peculiar to him. Furthermore, the objection is to be: First, to the sufficiency of the certificate of nomination; and, second, to the eligibility of a candidate. Under the circumstances here involved, there would be no objection to the sufficiency of the certificate of nomination by the appellant. For all that appears, the certificate was in sufficient form and signed by the proper officials.

Appellee's objection is not to the certificate, but rather to the proposition that there could be no nominations because there was no vacancy to be filled. As before indicated, there is a further objection contemplated by the statute. That objection is to the eligibility of the candidate nominated. This portion of the statute did not place a burden upon the appellee to object, because the appellant was an eligible candidate if there had been a vacancy to fill. The waiver, abandonment, or estoppel now claimed by the appellee cannot be predicated upon the fact that he did not object to the sufficiency of the certificate of nomination or to the eligibility of the appellant. Among the reasons why this is true is the one that the certificate was legally sufficient, and the appellant was eligible if there had been a vacancy to fill.

An objection was interposed by the appellee with the Republican Central Committee at the time it met to nominate a candidate to fill the alleged vacancy. Likewise, the appellee interposed objections with the body that was canvassing votes. He challenged the right of that body to declare the appellant elected on the theory that there was no vacancy to be filled. When testifying, the appellee stated that he informed the State Central Committee that he did not want his name presented for nomination under any circumstances. At no time, the appellee says, did he authorize the Republican Central Committee to nominate him for the alleged vacancy. So, too, the appellee testified that he did not consent that his name be placed upon the ballot as a candidate for the position. Moreover, the appellee testified that he did not consent that his name be certified to the secretary of state as a candidate. According to his testimony, he did not authorize or consent that his name be certified to the several county auditors in the state, nor did he consent that the votes cast to fill the alleged vacancy be canvassed. Finally, it is said by the appellee that he did not solicit votes at the election for himself, nor did he authorize any one to, or consent that any one, vote for him. The appellant did not rely upon any act of the appellee. As a matter of fact, the appellant was nominated before the appellee. No prejudice was caused the appellant, therefore, because of any action of the appellee.

Under the record as it is certified to us, therefore, it cannot be said that because of estoppel, waiver, or abandonment the appellee is barred from holding the office under the original appointment by Governor Turner. By the foregoing discussion, we do not hold that

there could, in any event, be an estoppel, in view of the fact that the people of the state are interested in their public officers and the election thereof.

IV. In addition to the foregoing contentions of the appellant, he also claims that the district court erred because it overruled his motion for a change of venue transferring the cause from Clinton to Polk county.

The appellant is a resident of Polk county, and he was such resident during all the times material to this controversy. As a basis for his motion for a change of venue, the appellant alleges that the quo warranto action was brought in Clinton county at the "instigation and procurement" of the said appellee. Because of such instigation and procurement, the appellant declares, the appellee waived "the usual rights of a bona fide defendant" in a quo warranto proceeding. Therefore, the appellant argues that under sections 11049 and 11052 of the 1931 Code he had a right to have the cause transferred to the county of his residence. If, then, under the theory of the appellant's motion, the appellee did not instigate, or procure the bringing of, the suit, the ruling of the district court must be sustained.

Upon the presentation of the motion, three witnesses testified. They were the appellee E. C. Halbach, the county attorney of Clinton county, and J. E. Purcell. Mr. Purcell testified that quo warranto proceedings were brought in Clinton county as a public movement at the instance of the Clinton County Bar Association without the knowledge of the appellee. In support of Mr. Purcell's testimony, the appellee said:

"I did not have any knowledge that a meeting of the Clinton County Bar Association was to be held in reference to my holding the office of Supreme Court judge. I did not attend such meeting. I was in Des Moines at the time, and I didn't know that the meeting was held. I had nothing to do with it, and didn't know of it until I read of it in the newspaper. I was engaged in my regular office work at the Supreme Court at the time. I had nothing to do directly or indirectly with the notice prepared by Miller and Purcell notifying Mr. Halbach (the county attorney) to commence the action."

According to the county attorney, he commenced the action because of the aforesaid notice. While it appears that Purcell and

Miller, who are now the attorneys for the appellee, met with the bar of Clinton county in the initial stages of the proceeding, yet, under the record, it is conclusive that in the beginning they were not the attorneys for the appellee. It is apparent from the record that these men became the attorneys for the appellee after the quo warranto proceedings had been commenced by the county attorney. Of course, this case, as all other cases, cannot be decided on surmise or conjecture, but it must be determined on the facts revealed in the record.

Under the record, then, it cannot be found that the appellee instigated and procured the commencement of the quo warranto proceeding in his own behalf. Nor can it be said under such record that the appellee, and not the state, is the real party in interest. Because of all the facts and circumstances revealed in the record, therefore, it is apparent that the district court did not err in overruling the appellant's motion for a change of venue.

Wherefore, I concur in the affirming opinion.

KINTZINGER, J. (dissenting)—With all due respect to the affirming opinion filed in this case and after giving due consideration thereto, I am of the firm belief that the judgment of the lower court should be reversed.

1. Because the Constitution and laws contain ample authority for filling the vacancy at the next general election after it occurred. Article 5, section 11, of the Constitution; Article 4, section 10, of the Constitution; Article 11, section 6, of the Constitution; Code, section 609, and other provisions of the same chapter; Code, section 1155.

2. Because the provisions of the Constitution above referred to requiring that judges of the Supreme Court SHALL BE ELECTED BY A VOTE OF THE PEOPLE, when considered with our election laws, ARE sufficiently *self-executing* to validate the election.

The premise of the affirming opinion is that because the Legislature made no provision in section 1157, or elsewhere, in the Code, for filling a vacancy occurring within thirty days prior to the next general election, there was no valid election; that the constitutional provisions in reference to filling vacancies are not self-executing, and therefore even though the constitutional provisions clearly imply that the vacancy be filled at the next general election, they can-

not be enforced because the Legislature màde no provision to carry them out.

The opinion says:

"We do not understand counsel to contend that any of the fore-·going sections [referring to 609, 1155, 1157, and others] purport, in terms at least, to authorize nominations to fill vacancies to be made where such vacancy occurs less than thirty days prior to the next general ensuing election, but that, when given proper weight and effect in the interpretation of section 1157, permissive authority is shown to do so."

According to my impression the appellant does strenuously contend that there are provisions of the statute which expressly authorize the filling of such vacancies at the next general election.

If it is the manifest intention of the Constitution that this vacancy be filled at the next general election we should, if possible by any reasonable construction, give the statutes such construction as to harmonize them with the Constitution. Appellant does not attempt to evade the provisions of the Constitution; on the contrary, he desires to give them the construction implied thereby. Appellee attempts to read into section 1157 a provision which is not there, in order to avoid the express provisions of the Constitution. It is the well-settled law that all statutes should be construed, if possible, by any reasonable interpretation, so as to give effect to the intent of the Constitution.

Article 5, section 11, of the Constitution provides that,

"The Judges of the Supreme and District Courts *shall be chosen at the general election.*"

Article 12, section 1, which provides,

"This Constitution shall be the supreme law of the State, and any law inconsistent therewith, shall be void."

The Iowa Constitution as amended in 1916 provides:

"The general election for state, * * * shall be held in the same month and on the same day as that fixed by the laws of the United States for the election of presidential electors; * * * and thereafter * * * at such time as the general assembly may by law provide."

Article 4, section 10, provides:

"When any office shall, from any cause, become vacant, * * * the Governor shall have power to fill such vacancy, by granting a commission, *which shall expire* * * * *at the next election by the people.*"

Article 11, section 6, provides that:

"In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office, shall hold until the next general election, and until their successors are elected and qualified."

These provisions clearly show that judges of the Supreme Court are required to be elected by the people. Section 11 of Article 5 says they *shall be elected at the general election.* Section 10 of Article 4 provides:

"That the commission of the person appointed' to fill the vacancy *shall expire at the next election by the people.*"

Section 6 of article 11 says:

"That the person appointed to fill the vacancy shall hold until the next general election, and until their successors are elected and qualifed."

They all clearly imply that the vacancy shall be filled at the next general election. The qualifying words "and until their successors are elected and qualified," at the end of section 6, article 11, were no doubt inserted to avoid an interim between the election and the time the new officer was declared elected and qualified.

The vacancy in this case occurred twenty-four days before the election. Steps were immediately taken by both parties to nominate candidates under statutory provisions then existing to fill the vacancy.

Section 1157 provides that where the vacancy occurs *more than thirty days* prior to the election, it shall be filled at such election, and there it ends. This section makes no provision to fill a vacancy occurring *within thirty days prior* to the election; wherefore appellee contends the Legislature intended that vacancies occurring within thirty days should not be filled at the next general election. There might be some excuse for trying to read something into a

statute to make it harmonize with the Constitution, but there can be no excuse for reading something into it for the purpose of defeating its clearly implied intention.

If the Legislature had written into section 1157 a provision that a vacancy occurring within thirty days prior to the next general election could not be filled at such election, it might be held unconstitutional, as violating the provisions of the Constitution above enumerated. If as demonstrated in this case, a nomination to fill the vacancy could reasonably be made, between the time it occurred, and the next general election, such a provision in the statute might readily be held unconstitutional. In view of these facts it would be illogical and unreasonable to hold that such a questionable provision should be read into the statute.

Appellee proceeds with the assumption that there are no other provisions of the statute authorizing the filling of a vacancy occurring within thirty days before the election. If our statutes reasonably authorize filling the vacancy at the next general election, then the person duly elected would be entitled to his office. Appellant contends that sections 609, et seq. and 1155 do make such provisions.

Section 609 provides:

"Nominations occasioned by vacancies in office when such vacancies occur after the holding of the county, district, or state convention, * * * *shall be made by the party central committee for the * * * state.*"

Other sections provide for certifying the nomination, and placing the names of such nominees on the ballot and the certification of the election of the successful candidates.

The nominations so provided for are undoubtedly to fill vacancies occurring any time after the regular state convention. The vacancy in this case occurred after the regular state convention of both parties. The administrative officers of the entire election machinery of the state, including the Governor, the secretary of state, the Attorney General, and others construed this statute as requiring both parties to make the nominations. Appellant and appellee were both placed in nomination pursuant thereto.

Recognizing the party central committee's authority to make such nominations, the Governor and secretary of state issued and filed certificates of nomination, to which no objections were made. The names of the candidates so nominated were placed upon the

ballot at the same time along with all the other state candidates. Appellant was elected by an overwhelming majority. This plainly shows that the electors of the state were duly advised of the nominations made, and no objection to the election for want of notice could now be sustained. Dishon v. Smith, 10 Iowa 212. Still further recognizing the legality of the election the executive and administrative officers of the state issued certificates of election to appellant.

Section 609 not only impliedly, but expressly permits, filling the vacancy at the next general election.

This section makes no distinction as to the offices for which nominations can be made, but fairly and reasonably includes *all offices in which a vacancy occurs.* It would be absurd to deny that a vacancy existed. If one existed the party central committees were authorized to fill it. For what other purpose could the nominations be authorized but to fill the vacancy? This is impossible of comprehension.

Section 609 permits nominations to fill vacancies occurring after the regular state convention was held, and *is not limited to those occurring more than thirty days prior to the* election. It is unlimited and unrestricted, and expressly includes nominations, to fill all vacancies occurring after the state convention, and prior to the next general election. The only limitation that could reasonably be placed on it would be one where the vacancy should occur so shortly before the election as not to allow a reasonable time to make them, and advise the general public thereof. No other limitation should be permitted, and no other restriction should be read into the statute. To hold this election invalid would be to invalidate a mandatory constitutional provision by a legislative enactment.

There can be no doubt that such a reasonably sufficient time elapsed between the vacancy and the election as to reasonably enable making the nominations and placing the names on the ballot for a sufficient length of time before the election to advise the electorate thereof. If the lower court was justified in reading something into section 1157 which might make it unconstitutional, then by the same token it would be more justified in construing section 609 and 1155 as permitting the nominations made, in order to harmonize the statutes *with the Constitution.*

Section 609 apparently gives full and complete power to the

party central committee of each party to make nominations to fill the vacancies created. There is nothing uncertain about it.

Appellant contends that section 1155, especially when re-enforced by section 609, affords ample authority to fill the vacancy at the next election. Section 1155 provides:

"An officer filling a vacancy *in an office which is filled by election of the people* shall continue to hold until the next *regular election at which such vacancy can be filled.*"

This office is by the Constitution required to be filled *"by election of the people* at the general election." This statute may be subject to two constructions. The first can be made clear by transposing the words as follows:

"Where an office is filled by election of the people a vacancy therein *can be filled at the next regular election.*"

In other words, such a meaning can be read into this statute without changing one word. The provision that the person filling a vacancy in an office continues to hold it until the next regular election *at which such vacancy can be filled,* is capable of meaning that the vacancy can be filled at the next regular election. By giving it such construction nothing need be read into it because the words are all there. If this meaning can be implied from the words, and the words do reasonably imply such meaning, then the authority for the election is complete.

This statute permits the electorate to fill the vacancy at the next regular election *at which such vacancy can be filled.* As another construction of this section appellant contends that if it is reasonably possible to fill the vacancy at the next election, then permission so to do is granted by the statute. That the election was held, is uncontrovertible proof that it *could* be held.

When section 1155 is considered with and re-enforced by section 609, expressly providing that nominations to fill vacancies occurring after the holding of the state convention *can be made by the party central committee,* it is clear they constitute a sufficient statutory authority to validate the election. And when they are further construed in connection with the constitutional provisions providing for the filling of the vacancies at the next general election, there can be no doubt that the statutory permission to carry out the implied provisions of the Constitution was fully given.

Wherever the language of the constitution is obscure, doubtful, or ambiguous, or by the generality of its terms leaves fair room for implication, it is open to construction in aid of which courts may properly consult the general spirit of the Constitution as indicated by its terms.

II.    The foregoing discussion is made upon the assumption, indulged in by appellee, that the provisions of the Constitution are not self-executing. This assumption is also indulged in when the affirming opinion says "the Constitution, as stated, is in no sense self-executing". This statement is made as the settled law on that subject.

Many authorities, however, hold that many provisions of the Constitution *are* self-executing.

"Constitutional provisions are self executing when there is a manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. 12 C. J. 729, section 106.

"That a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self executing; nor does the self executing character of the constitutional provision necessarily preclude legislation for the better protection of the right secured. A constitutional provision which is merely declaratory of the common law is self executing. A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will." 12 C. J. 729, 730, section 106.

Innumerable cases are cited in the notes to the foregoing reference, supporting the doctrine that many provisions of the Constitution are self-executing, and need no further supplemental legislation to carry them into effect. Such constitutional provisions are the supreme law of the land.

Section 11 of article 5 provides that, "The Judges of the Supreme and District Courts *shall be chosen at the general election.*" There is no uncertainty as to the mandatory character of this provision. It will hardly do for us to hold that this provision of the Constitution is illegal simply because the Legislature did not supplement it by further legislation. If there is time and opportunity for electing a judge of the Supreme Court to be chosen at the next

general election, it will hardly do to say it is illegal to do it. This section of the Constitution requires the judges of the Supreme Court *to be elected at the general election*. At what general election? This can be implied from the other sections of the Constitution in reference thereto.

Article 4, section 10, authorizes the Governor to fill a vacancy "by granting a commission which shall *expire * * * at the next election by the people.*"

Article 11, section 6, provides that all persons appointed to fill vacancies in office *shall hold until the next general election*, and until their successors are elected and qualified.

From a consideration of the provisions of our Constitution, it seems apparent that the Constitution itself provides the manner and time of electing judges. A judge elected to fill a vacancy is just as much a judge as one elected to fill a full term. It is therefore just as necessary to fill vacancies created in that office by election as it is to elect one at the expiration of a full term.

The Iowa Constitution as amended in 1916 provides:

"The general election for state, * * * shall be held in the same month and on the same day as that fixed by the laws of the United States for the election of presidential electors; * * * and thereafter * * * at such time as the general assembly may by law provide."

Section 504 of the Code also provides:

"The general election for state, district, county, and township officers shall be held throughout the state on Tuesday, next after the first Monday in November of each even-numbered year."

In the case of State v. Thoman, 10 Kan. 191, the court, speaking through Justice Brewer, says:

"It is insisted, that the constitution is not self-executing, and that some legislation authorizing an election, prescribing place and manner, and establishing rules and regulations, must be had before any valid election can be held. It is unnecessary for us to inquire how far the absence of all legislation would affect an attempted election, for the legislature has by the election law * * * established all necessary rules and regulations, and provided all requisite machinery for conducting elections, ascertaining their re-

sults, and contesting the same. The constitution * * * fixes the time for general elections on the Tuesday succeeding the first Monday in November of each year, so that time and place, manner and machinery, are all provided. Indeed, the only thing wanting, if anything be wanting, to make valid this election is express statutory authority therefor. The term of office is, as we have seen, four years. This being a constitutional provision is beyond legislative change. * * * At the expiration of a term there arises no vacancy which can be filled by appointment. An election must be had, or the then incumbent continues. * * * A simple omission of the legislature to act might thus give to an incumbent a life lease of his office. While the possible abuse of a power is no ground for questioning its existence, (for power must be lodged somewhere, and there is always possibility of its abuse,) yet where grave doubts exist as to the meaning and effect of a certain constitutional provision, the balance may sometimes properly be turned by a consideration of results. The constitution is the paramount law. It is above legislatures, and courts. It was intended as a paramount rule, to be changed only by the people in their sovereign capacity. By it they have expressed their purpose, a purpose not to be thwarted by their representatives. As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails. As between two constructions of the former, that which gives stability and force is preferred to that which makes it simply an expression of desire, subject to the omissions or caprices of each succeeding legislature. The manifest purpose of the constitutional provisions is to secure not merely a fixed term of office to judges, but also to the people at stated intervals the opportunity of changing the incumbents. Now, if the constitutional term has no force till re-enacted in the statute, the latter would seem the paramount authority; and all constructions which make the former dependent on the latter tend to belittle the permanent law. The constitutional provision is, that in each district 'there shall be elected by the electors thereof, a district judge, who shall hold his office for the term of four years.' This does not apply to the first district judges alone, but establishes a permanent rule. * * * Of course, where it speaks its words declare its meaning; but it is impossible, in the general terms in which it is couched, to provide expressly for all possible contingencies. It must be so construed as to give force to and uphold its several provisions; and in so construing it, it not unfrequently happens that something must be

implied to give force to that which is expressed. It says the people shall elect the judges; that the term of office of district judges shall be four years; that general elections shall be held 'on the Tuesday succeeding the first Monday in November. IS IT NOT A FAIR implication that it authorizes an election at the general election last prior to the commencement of each term? Implied authority similar to this is spoken of approvingly in the cases of the State ex rel. Crawford v. Robinson, 1 Kan. 26, and the State ex rel. Watson v. Cobb, 2 Kan. 54. We are aware of the difficulties attendant upon this construction, and that in some respects it savors of judicial legislation, something which all courts should be careful to avoid. But in no other way can we uphold the various provisions of the constitution, and carry into effect the will of the people clearly expressed therein. Our conclusion therefore is, that the election of 1871 for district judge was valid."

These provisions of our court clearly imply that the judges to be elected *shall be chosen at the next general election.* Our own court has held that some provisions of the Constitution are self-executing. Halsey & Co. v. Belle Plaine, 128 Iowa 467, 104 N. W. 494. In that case we held that,

"Section 3, Article 11, of the constitution, limiting municipal indebtedness, became self-executing on its adoption, *without subsequent legislation to give it force and effect."*

Our Constitution in mandatory language requires that the judges of the Supreme Court *shall be chosen at the general election.* Therefore if there was reasonably sufficient time to nominate them, place them on the ballot, and elect one of them, the election should be held valid.

The security of our government depends upon the preservation of the Constitution; and the duty of preserving the Constitution rests in our courts. This is a duty we cannot evade regardless of consequences to litigants. In this case not only the implications of the Constitution require the election of judges by the people at the next general election, but the plain, unambiguous, and mandatory language thereof requires it. If therefore an election occurs at such a reasonable time after the vacancy, then an election by the people to fill that vacancy through the election machinery of the state should be held valid. The filling of this vacancy requires the elec-

tion of a judge of the Supreme Court by the people at the next election following the vacancy. The election in this case was held twenty-four days after the vacancy occurred. There was ample time between the creation of the vacancy and the election to fully advise the electorate of the candidates for that office. Where the provision is mandatory it is self-executing.

"A provision that a certain question *may* be submitted to a vote of the electors in the manner that shall be provided by law is not self-executing. But a clause providing that an officer *shall be elected* at election of members of the General Assembly, when taken together with the statutes governing elections of members of the General Assembly, is self-executing." 12 C. J. 735, section 125.

"Where the term of an office is fixed by the constitution, and its commencement is once prescribed by law, the constitutional provision is self executing *to the extent of rendering valid an election to fill such office* held at the last general election before the expiration of the term, *although no provision has been made by the statute for an election to fill this office.*" 12 C. J. 735, last par. of section 125.

See, also, State v. Thoman, 10 Kan. 191.

Regardless of the fact that no statutory provisions were enacted by the Legislature authorizing the filling of this vacancy, which I do not concede, we have a case here where the time of holding the election was duly fixed, the election machinery provided by statute was set in motion, both candidates for judge of the Supreme Court were duly nominated by their respective parties long enough before the election to give ample publicity to such nomination, the election was held, and the people by decisive majority elected appellant to the office.

In view of the fact that such election was held, and in view of the further fact that the Constitution expressly provides that the judges of the Supreme Court *shall be chosen by the people,* we cannot escape the conclusion that the election was valid. To hold otherwise would have the effect of holding such constitutional provision illegal simply because, as contended by the ingenious argument of counsel, that no statutory provision was made to fit this particular case. *A constitutional provision cannot be held illegal by a legislative enactment, much less can it be held ineffective by no such enactment.*

Such a holding would do violence to both the spirit and the letter of the Constitution.

For these reasons, to say nothing about the question of estoppel, I respectfully dissent from the affirming opinion. I am abidingly convinced that the ruling of the lower court should be reversed, and the election of appellant be held valid.

The foregoing dissent is joined in by JUSTICE MITCHELL.